COOPER, WHITE & COOPER LLP
WALTER W. HANSELL (SBN 114913)
JIE-MING CHOU (SBN 211346)
201 California Street, 17th Floor
San Francisco, California 94111
Telephone:    (415) 433-1900
Facsimile:    (415) 433-5530
whansell@cwclaw.com
jchou@cwclaw.com

Attorneys for defendants COMCAST CABLE
COMMUNICATIONS MANAGEMENT, LLC

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| MASTEC NORTH AMERICA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO. C08-03759 <br><br> **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)** <br> **(Diversity)** |

TO THE CLERK OF THE COURT OF THE NORTHERN DISTRICT OF

CALIFORNIA:

PLEASE TAKE NOTICE that Defendant COMCAST CABLE COMMUNICATIONS

MANAGEMENT, LLC ("Comcast") hereby removes to this Court the state court action described

below:

1.      On July 3, 2008, an action was commenced in the Superior Court of the State of

California in and for the County of Alameda, entitled MASTEC NORTH AMERICA, INC.

("MasTec"), Plaintiff, vs. COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,

and DOES 1 through 50, inclusive, as case number RG08396457.  A true and correct copy of the

complaint is attached hereto as Exhibit "A".

COOPER, WHITE & COOPER LLP
ATTORNEYS AT LAW
CALIFORNIA STREET
SAN FRANCISCO, CA 94111

605363.1

Defendant's Notice of Removal

1    2.    On July 7, 2008, plaintiff served the complaint on Comcast's registered agent. A

2 true and correct copy of the summons is attached hereto as Exhibit "B".

3    3.    On August 5, 2008, Comcast filed its answer to plaintiff's complaint. A true and

4 correct copy of Comcast's answer is attached hereto as Exhibit "C".

5    4.    Jurisdiction. This action is a civil action of which this Court has original

6 jurisdiction under 28 U.S.C. § 1332, and is one which may be removed to this Court by defendant

7 pursuant to the provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of

8 different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and

9 costs, because plaintiff alleges damages in the amount of $1,071,797.

10    5.    Defendant is informed and believes that plaintiff, MasTec, was, and still is, a

11 Florida corporation doing business in the State of California.

12    6.    The sole member of Comcast is a Pennsylvania corporation with its principal place

13 of business in Philadelphia, Pennsylvania.

14    7.    Intradistrict Assignment. This complaint has been removed to the San

15 Francisco/Oakland Division of the Northern District because the original state court action was

16 filed in the County of Alameda.

17 DATED: August 6, 2008                COOPER, WHITE & COOPER LLP

18

19                                     By: _____

20                                         Jie-Ming Chou
                                           Attorneys for COMCAST CABLE
                                           COMMUNICATIONS MANAGEMENT, LLC
21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
1 CALIFORNIA STREET
4 FRANCISCO, CA 94111

605363.1

2

Defendant's Notice of Removal

**EXHIBIT A**

11612161214-111-7/1/2008 1:57:09 PM

10571941514-111-7/2/2008 4:57:02 PM

1 | GEORGE KNOPFLER, ESQ. (State Bar No. 094041)
JAMES PAZOS, ESQ. (State Bar No. 163609)
2 | KNOPFLER & PAZOS
An Association of Professional Law Corporation
3 | 31194 La Baya Drive, Suite 101
Westlake Village, CA 91362
4 | Phone (818) 991-2277
Fax    (818) 991-2270
5 |

6 | Attorneys for Plaintiff, MasTec North America, Inc.

7 |

8 |

9 |                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

10 |                         FOR THE COUNTY OF ALAMEDA

11 |

12 | MASTEC NORTH AMERICA, INC., a Florida )    CASE NO. RG 0 8 3 9 6 4 5 7
corporation,                           )
13 |                                    )    COMPLAINT FOR:
            Plaintiff,                 )
14 |                                    )    1)  BREACH OF CONTRACT
       vs.                             )    2)  QUANTUM MERUIT
15 |                                   )    3)  OPEN BOOK ACCOUNT
COMCAST CABLE COMMUNICATIONS           )
16 | MANAGEMENT, LLC, and DOES 1         )
THROUGH 50, inclusive,                 )
17 |                                    )    BY FAX
            Defendants.                )
18 |

19 |      COMES NOW Plaintiff, MASTEC NORTH AMERICA, INC., (hereinafter referred to

20 | as "Plaintiff") for causes of action against Defendants, COMCAST CABLE

21 | COMMUNICATIONS MANAGEMENT, LLC and DOES 1 THROUGH 50 (hereinafter referred

22 | to as "Defendants") and, each of them, alleges as follows:

23 |                         **GENERAL ALLEGATIONS**

24 |      1.     Plaintiff, MASTEC NORTH AMERICA, INC., is a corporation, formed under the

25 | laws of the State of Florida and doing business in California.

26 | ///

27 | ///

28 |                                   - 1 -

ENDORSED
FILED
ALAMEDA COUNTY

JUL 0 3 2008

CLERK OF THE SUPERIOR COURT
By ____ DHN___, Deputy

2.      Plaintiff is informed and believes and based thereon alleges that Defendant, COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC (hereinafter referred to as "COMCAST" or "Defendant") is a limited liability company organized under the laws of the State of Delaware and doing business in the County of Alameda, State of California.

3.      Defendants, DOES 1 through 50, inclusive, are sued pursuant to the provisions of California *Code of Civil Procedure*, Section 474. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 through 50. Plaintiff is informed and believes and on the basis of such information and belief alleges that all fictitiously named Defendants and each of them have some connection with the activities herein complained of, and are responsible in some way for the wrongful conduct herein alleged.

4.      Plaintiff is informed and believes and based thereon alleges that unless otherwise stated, Defendants and each of them are, and at all times herein mentioned were, the managing agents, joint venturers, officers, members, representatives, servants, consultants, affiliates, subsidiaries parents or employees of their co-Defendants, and in committing the acts herein alleges, were acting within the scope of such affiliation with the knowledge, permission, consent or subsequent ratification of their co-Defendants.

## FIRST CAUSE OF ACTION

### FOR BREACH OF EXPRESS CONTRACT

#### Against all Defendants

5.      Plaintiff re-alleges and incorporates by this reference paragraphs 1 through 4 above, as though fully set forth herein.

6.      Plaintiff and Defendants entered into a construction agreement regarding the performance of work and services relating to the construction and installation of broadband communications infrastructure (hereinafter the Agreement). Attached hereto as Exhibit "A" and incorporated herein by this reference as though fully set forth is a true and correct copy of the Agreement.

- 2 -

7.    Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, have breached the Agreement by failing and refusing to pay Plaintiff all sums due under the Agreement.

8.    Plaintiff is informed and believes and thereon alleges that Plaintiff has performed all obligations required to be performed by Plaintiff under the agreement, except those obligations legally excused.

9.    Plaintiff is informed and believes and based thereon alleges that as a direct and foreseeable result of Defendants' breach of the Agreement, Plaintiff has suffered damages and continues to suffer damages, in an amount yet to be determined, but in excess of $1,071,797, plus pre-judgment interest from the date of Defendants' breach as allowed by law.

## SECOND CAUSE OF ACTION

### FOR QUANTUM MERUIT

### (Reasonable Value of Labor, Services and Materials)

#### Against all Defendants

10.    Plaintiff re-alleges and incorporates by this reference each and every fact alleged in paragraphs 1 through 9 above as though fully set forth herein.

11.    Within two years of the filing of this action, Plaintiff, at Defendants' request, performed and provided construction services for Defendants.

12.    Defendants knew that Plaintiff's services were being provided and that Plaintiff would incur costs, expenses and fees associated with providing these services and promised to pay the reasonable value of Plaintiff's services and the cost, expenses, and fees incurred by Plaintiff.

13.    Defendants accepted, used, and enjoyed the services provided by Plaintiff.

14.    Plaintiff is informed and believes and thereon alleges that the fair and reasonable value of the services provided to Plaintiff, together with the costs, fees and expenses paid by Plaintiff for Defendants in connection with these services is at least $1,071,797.

- 3 -

15.    Demand has been made on Defendants for said sum, but no payment has been made by Defendants to Plaintiff.

16.    Defendants' failure to pay Plaintiff $1,071,797 has damaged Plaintiff in the amount of at least $1,071,797.

### THIRD CAUSE OF ACTION

### FOR OPEN BOOK ACCOUNT

#### Against Defendants

17.    Plaintiff re-alleges and incorporates by this reference each and every fact alleged in paragraphs 1 through 16 above as though fully set forth herein.

18.    Within four years prior to the commencement of this action, Defendants became indebted to Plaintiff on an open book account for a balance due in the sum of $1,071,797.

19.    Demand has been made on Defendants for said sum, but they have failed and refused and continue to fail and refuse to pay said sum, and the whole thereof is now due, owing and payable together with interest at the legal rate.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

#### ON THE FIRST CAUSE OF ACTION

1.    For consequential and incidental damages according to proof, but in excess of $1,071,797;

2.    For prejudgment interest according to law.

#### ON THE SECOND CAUSE OF ACTION

1.    For consequential and incidental damages according to proof, but in excess of $1,071,797;

2.    For prejudgment interest according to law.

#### ON THE THIRD CAUSE OF ACTION

1.    For consequential and incidental damages according to proof, but in excess of $1,071,797;

1    2.    For prejudgment interest according to law.

2    **ON ALL CAUSES OF ACTION**

3    1.    For costs of suit herein incurred; and

4    2.    For such other and further relief as the Court may deem proper.

5

6    DATED: July 3 , 2008

        Knopfler & Pazos
7        An Assn. of Professional Law Corporations

8

9    By: _____
10        GEORGE KNOPFLER, ESQ.
        Attorneys for Plaintiff,
11        MasTec North America, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

1162161214 - 7/17/2008 1:57.09 PM

## MASTER CONSTRUCTION AGREEMENT
BAY - 050906 - 01

**THIS MASTER CONSTRUCTION AGREEMENT** (this, "Agreement") is entered into as of January 1, 2006 (the "Effective Date") by and between Comcast Cable Communications Management, LLC on behalf of itself and each of its Affiliates providing broadband communications services in the area where work is to be preformed under this Agreement ("Company"), with offices located at 12647 Alcosta Blvd., Suite 200, San Ramon, California, 94583 and MasTec North America, Inc. ("Contractor"), with offices located at 12751 Westlinks Drive, Fort Meyers, Florida 33913. The Company and Contractor may each be referred to as a "Party" and collectively, the "Parties."

In consideration of the mutual covenants, terms and conditions contained in this Agreement, the parties agree as follows:

1.    **Definitions**. As used in this Agreement, the following terms shall have the meanings set forth below:

"**Affiliate**":  Any person or entity that controls, is controlled by or is under common control with the referenced person or entity.

"**Company Representative**": The Company's designated individual specified in the Statement of Work as Contractor's primary point of contact regarding the SOW.

"**Audit**":  An inspection of the Company's broadband distribution system and/or customer installation interface by Contractor to identify unauthorized connections or unauthorized interception of the Company's services or signals.

"**Community**": The geographic area or areas (including, without limitation, city, county, metropolitan area or other geographic area) within which a SOW is to be performed.

"**Contract Documents**":  This Agreement, together with any and all exhibits and attachments hereto.

"**Disconnect**":  Discontinuance of service to a customer or other third party by disconnecting the customer or third party from the broadband distribution system.

"**Governmental Authorities**":  All federal, state, county, municipal and local governments, and all departments, commissions, boards, bureaus and/or offices thereof, having or claiming jurisdiction over any of the Work performed pursuant to this Agreement.

"**Legal Requirements**": All laws, statutes, codes, acts, ordinances, orders, judgments, decrees, injunctions, directions and/or requirements of all Governmental Authorities, foreseen and unforeseen, ordinary or extraordinary, which now or at any time hereafter may be applicable to or required in connection with the Work or the parties to this

Rev. December 2005

## EXHIBIT "A"

1161216121M - 7/7/2008 1:57:09 PM

Agreement, including, without limitation, those set forth in Section 8 and in any cable television Franchise and/or ordinance granted to the Company and its Affiliates.

"Documents": The Statements of Work and all Purchase Orders and all documents related thereto, and incorporated therein by reference, as well as all related lien waivers and releases.

"Specifications": The specifications to which the Work hereunder must be performed, as set forth herein and in the Statement of Work, as further described in Section 2(b) and **Exhibit A**. To the extent applicable to the Work, the Specifications include, without limitation, the Company's construction, engineering and installation procedures and manuals and related documents and bulletins, as such documents may be modified from time to time.

"Subcontractor": A person or entity that has a contract through Contractor, at any level or tier, to perform any portion of the Work.

"Unavoidable Delay": Delays in the progress of the Work to the extent resulting from fire or other casualty, governmental orders, acts of civil or military authorities, acts of third parties (including any delays in make-ready work for which the Company is responsible pursuant to Section 7(a)(i), but not including any third parties for whose performance Contractor is responsible such as Subcontractors and suppliers), emergency conditions (including weather conditions) incompatible with safety or good quality workmanship, or other causes beyond Contractor's reasonable control (other than unavailability of funds); provided, that such delay is not caused in whole or in part by Contractor's or any Subcontractor's actions or omissions, and that Contractor gives the Company written notice within three (3) calendar days after the initial occurrence of such Unavoidable Delay.

"Work": All labor necessary to accomplish, and all materials, supplies and equipment to be used in connection with and/or necessary for, the construction, installations, Audits, or Disconnects required by the Documents issued pursuant to this Agreement, including all labor, materials, supplies and equipment reasonably inferable as being required under the Documents.

"Work Order": Any document or documents issued to Contractor by the Company in connection with the Work which specify particulars of Work to be performed, including, but not limited to, location, equipment or material to be installed, services to be authorized or delivered, number of outlets to be connected, or any other necessary instructions to Contractor. A Work Order, as referred to herein, may consist of or include system maps, lists of addresses, printed work orders, Cable service agreements and any other documents which the Company may deem appropriate.

2.    **Assignment of Work.**

(a)    During the Term, the Company and Contractor may from time to time enter into statements of work ("Statements of Work" or "SOW") setting forth Work that Contractor shall

Rev. December 2005

1161612.M - 7/7/2008 1:57:09 PM

perform pursuant to the terms of this Agreement. Separate Statements of Work may be used by the Company for phases or portions of any given Company SOW.

(b)   Each Statement of Work generally describes the type of Work required, the Community in which the Work is to be performed, the Specifications for the Work, the start date of the requested Work, the date by which the Work must be completed ("Completion Date"), special terms and conditions, if any, and, if applicable, the process for assignment of the Work by means of periodic Work Orders (or by other means) issued by the Company to Contractor. Such Statements of Work will be in a form similar to **Exhibit A** attached hereto as modified by the Company for any particular SOW. If the Company is to furnish any tools to be used in connection with the Work, such tools and materials shall be described in the Statement of Work. Except as specifically set forth on any Statement of Work, Contractor shall furnish all labor, tools and equipment necessary to carry out and complete the Work. Except as specifically set forth in a Statement of Work, the Company shall furnish all materials (items that will become a part of the Company's broadband distribution system or installed in any customer's premises) necessary to carry out the Work. The Statement of Work shall set forth the pricing for each type of Work (e.g., firm fixed price, time & materials, fixed unit price included in the SOW). The Company and Contractor shall sign the Statement of Work and the Statement of Work shall become binding on Contractor and the Company and shall become a part of the Agreement by this reference. No Statement of Work shall be binding upon the Company until executed by both Parties.

(c)   This Agreement is non-exclusive and the Company reserves the right to execute similar Agreements with other contractors. The delivery of Statements of Work by the Company to Contractor is totally discretionary. The Company makes no representation (i) that it will deliver any Statement of Work to Contractor, (ii) that it will accept any pricing offered by Contractor or (iii) that Contractor will receive any Work pursuant to this Agreement.

(d)   The Contract Documents are intended to be complementary and supplementary to each other and cumulative. If provisions relating to a particular subject matter are contained in more than one of the Contract Documents relating to the same SOW, Contractor shall comply with all such provisions in connection therewith, except that if, and only to the extent that, such provisions are sufficiently inconsistent that it is not possible to comply with all such provisions, then Contractor shall be governed by and comply with the provision or provisions contained in the Contract Document having the highest priority as set forth below, and the other provision or provisions that are inconsistent with the highest priority Contract Document shall be inoperative solely to the extent they conflict. The order of priority of the Contract Documents shall be as follows: First (Highest Priority): All the Company manuals and other Specifications that are incorporated by reference; Second: The applicable Statement of Work; Third: this Agreement; and Fourth: The Purchase Order applicable to the Statement of Work. Contractor shall promptly notify the Company when it becomes aware of any conflict among provisions of the Contract Documents.

(e)   At the Company's request, and at the Company's sole discretion, the Company may request bids in connection with, or prior to the execution of a Statement of Work. Any such bid submitted by Contractor shall comply in all respects with any written bidding procedures and requirements created by the Company from time to time and delivered to Contractor. In the

Rev. December 2005

event that the Company provides to Contractor a form of bid that the Company would like Contractor to use, Contractor shall use such bid form.

3.    **Purchase Orders.**  If The Company and Contractor both execute a Statement of Work, the Company shall issue a purchase order or orders to Contractor ("Purchase Orders") and Contractor shall perform the Work as indicated on the Purchase Orders or SOW corresponding thereto; provided that to the extent the preprinted terms of the Purchase Order are inconsistent with the terms hereof, the terms hereof shall prevail. Contractor understands that the dollar amount stated on any Purchase Order is not guaranteed to Contractor (unless the Statement of Work and the Purchase Order expressly state that the Work is to be done for a firm fixed price), nor is such amount necessarily the total contract price for a SOW. Rather, such amount is in the nature of an approved maximum dollar amount against which Contractor may issue Invoices. In no event shall charges to Company under this Agreement exceed the amount authorized in writing by the Company for the underlying SOW. The Company will make no payment except for Work actually properly performed and invoiced. One or more Purchase Orders may be issued in connection with any SOW, and each such Purchase Order shall bear the number set forth on the first page of this Agreement and the SOW under which it is issued.

4.    **Commencement of Work.**  TIME IS OF THE ESSENCE IN THIS AGREEMENT. However, Contractor shall not commence any SOW prior to the later of (a) receipt by Contractor of a Purchase Order for such SOW, (b) the obtaining of all Permits, where applicable (as described in Sections 6 and 7) and (c) delivery of all insurance certificates and compliance with all insurance procedures as described in Section 13. Contractor agrees that upon commencement of a SOW, it will prosecute all Work in connection therewith diligently and continuously so as to complete the SOW by the Completion Date.    .

5.    **Term.**  The term of this Agreement ("Term") shall commence on the Effective Date and shall terminate on December 31 of the year indicated in such date, unless terminated sooner pursuant to the provisions of this Agreement. The Term shall be automatically extended on a year-to-year basis unless either of the parties provides written notice of termination to the other at least thirty (30) calendar days prior to the end of the Term or any extension thereof; provided, that Contractor shall not have the right to terminate this Agreement prior to Completion of all SOWs assigned prior to such termination.

6.    **Contractor's Duties.**

(a)    Contractor agrees to furnish at all times an adequate supply of workers, equipment, tools and restoration materials (such as concrete and asphalt) and to perform each SOW in a good, professional and workmanlike manner, in strict accordance with the Contract Documents and standard construction practices that are customary in the cable television, broadband distribution and telephony industries. If the Documents contain conditions or limitations regarding the make or manufacture of materials or supplies to be furnished by Contractor in connection with a SOW, Contractor shall not make any substitution for those items unless the applicable Documents are amended by a written document executed on behalf of the Company.

Rev. December 2005

1161612114 - 7/7/2008 4:57:09 PM

(b)     Contractor shall, at its expense, obtain all necessary licenses and Permits to perform the Work within the Community. Contractor shall apply for all required licenses and Permits within five business days after notification of execution by both the Company and Contractor of a Statement of Work. Contractor warrants that at all times during the term of this Agreement Contractor, and all Subcontractors, will be properly licensed or authorized by all appropriate Governmental Authorities to perform lawfully all of the Work. CONTRACTOR SHALL NOT BEGIN WORK UNTIL ALL NECESSARY PERMITS HAVE BEEN OBTAINED, AND IT SHALL BE THE DUTY OF CONTRACTOR TO CONFIRM THAT ANY PERMITS WHICH MUST BE OBTAINED DIRECTLY BY THE COMPANY, HAVE BEEN OBTAINED PRIOR TO COMMENCEMENT OF ANY WORK. Without limiting any other provision in this Agreement, Contractor agrees that is shall not sub-contract any portion of the Work to be performed hereunder without the prior written approval of the Company. All such permitted contracts shall provide that any subcontractor shall be bound by, and to the extent applicable, perform all terms and conditions of this Agreement, including without limitation, as set forth in any exhibits to this Agreement. No subcontracting of Work shall release Contractor from any of its obligations contained in this Agreement.

(c)     Contractor warrants that upon final payment for each SOW, it will transfer the Work included in the SOW to the Company in good condition, free and clear of all liens, claims and encumbrances arising out of the Work. Contractor agrees to hold the Company free and harmless from and against any and all liens and claims of liens or from any other claims with respect to the value of labor or materials included in the SOW or otherwise relating to Contractor's performance of the Work and from and against all expenses and liability in connection therewith (including without limitation any court costs and attorneys' fees and expenses resulting or arising therefrom). Should any lien or claim of lien be filed, or should the Company receive notice of any unpaid bill in connection with the Work, Contractor immediately upon notice of such from the Company shall either pay and discharge the bill and cause any lien to be released of record, or shall furnish the Company with appropriate indemnity by a bond in an amount and with surety satisfactory to the Company.

(d)     Contractor shall supply, without additional cost or expense to the Company, its own warehouse and office to house the necessary personnel, materials, tools, vehicles, equipment and other items required to manage and complete the Work. If the Company provides such space for Contractor, then Contractor agrees to pay the Company for the entire fair market cost thereof, plus ten percent (10%) for the Company's general administrative and overhead expenses. Contractor shall be solely responsible for ensuring the safety and security of such materials, tools, vehicles, equipment and other materials. Contractor shall maintain appropriate security procedures at any such warehouse. Upon Contractor's or any Subcontractor's receipt of materials, whether or not furnished by the Company and whether receipt is at the Company's premises or at Contractor's or any Subcontractor's premises, Contractor shall be liable for the security of the materials and/or any damages to or loss of the materials until the SOW into which such materials are incorporated is Completed. Upon Completion of a SOW, all unused and undamaged materials that were provided by the Company to Contractor shall be returned to the Company.

(e)     Contractor shall ensure that the Work meets all requirements contained in the Contract Documents. Contractor shall furnish the sole supervision and control of any labor

necessary to perform the Work, whether such labor is performed by Contractor's employees, agents or Subcontractors. Contractor and any Subcontractor shall not permit any person to perform Work, who is unfit in any way to perform such work. Neither Contractor nor any Subcontractor shall allow any worker to perform a job for which he or she is not certified if certification is required by any Legal Requirement. Contractor and any Subcontractor shall have a competent foreman on each SOW at all times who is acceptable to the Company, who has authority to act for Contractor in all matters pertaining to the SOW. Contractor's foreman shall meet with the Company's representative from time to time at the Work site or at other agreed locations. Contractor shall at all times conduct its operations and manage its personnel in such a manner that its actions, or the actions of its Subcontractors, agents or employees, will not jeopardize the Company or its public relations in the Community. Contractor agrees to accept no other work or contract that will interfere with the progress of any SOW.

(f)     Contractor shall be exclusively responsible for the occupational safety and health of its employees and agents while engaged in performance of the Work. Contractor shall take all safety measures that would be taken by a prudent contractor in the circumstances, including, without limitation, compliance in all respects with the rules, regulations, and requirements of the Occupational Safety and Health Administration and all other applicable Legal Requirements. Contractor immediately shall report to the Company in writing each known incident in the course of the Work resulting in property damage or personal injury.

(g)     Contractor acknowledges that its employees and agents may be dealing directly with the Company's customers and with representatives of Governmental Authorities which have significant regulatory power over the Company. Accordingly, Contractor agrees with respect to the Work, only to use and/or subcontract with persons suitable for work in a public environment and shall ensure that its employees, agents and Subcontractors shall not engage in actions which may detrimentally affect the Company or its reputation. Where required by Company, Contractor and all Subcontractors will issue and provide complete identification cards to their agents and employees who have contact with the general public, which identification cards will include a photograph and Contractor's or Subcontractor's name and telephone number. Such identification cards will be carried by all agents and employees at all times while performing the Work. The Company will coordinate with Contractor and any Subcontractor regarding the identification cards. Where it is decided that the Company will issue the identification card, the Company reserves the right to charge the Contractor and all Subcontractors a reasonable processing fee for production of the initial identification card as well as for the reproduction of lost and/or stolen identification cards. All identification cards shall identify the agent/employee as an independent contractor of Company. No identification cards shall be duplicated or given to any individual not performing Work. Contractor and each Subcontractor shall return to the Company all identification cards, regardless of who created the identification cards, of any individual who ceases to perform Work for any reason including, without limitation, because such individual quits or is terminated or because of the termination of this Agreement or any SOW. If Contractor or any Subcontractor produces its own identification cards, Contractor and such Subcontractor shall meet all specifications of the Company ID Badge Standard including, without limitation, providing to the Company a list of cardholders and a color copy of the pictures of such cardholders. In addition, Contractor and all Subcontractors shall clearly identify all vehicles and other major equipment used in connection with this Agreement, with Contractor's or Subcontractor's name or logo, as an independent Contractor of

Rev. December 2005

11612161 E:1 8002/11/1 - 11:21:09 PM

Company. Upon the earlier of the termination of this Agreement or upon Company's request, Contractor shall remove all Company marks, logos or other Company insignia from equipment and vehicles, uniforms, and any other material used by Contractor in connection with this Agreement. If so indicated in a Statement of Work, Contractor shall comply with, and shall ensure that all Subcontractors comply with, the requirements set forth in **Exhibit B** attached hereto.

      (h)    Contractor shall be responsible to the Company for the acts and omissions of Contractor's employees, agents and Subcontractors and for the acts and omissions of any employees and agents of Subcontractors.

      (i)    Contractor represents and warrants that it will inspect each area in which a Statement of Work is proposed and will become familiar with the area, the Specifications, construction procedures and methods required by the Company, the availability of labor, building and other codes and all other matters which can in any way affect the Work or the cost thereof. All such factors shall be considered by Contractor in connection with the Statement of Work. No damages or additional compensation shall be paid to Contractor for additional costs caused by obstructions or conditions that would have been reasonably discoverable by an on-the-job survey or on-site inspection of the area in advance of execution by Contractor of the Statement of Work or which might commonly be expected to exist in the area. The price or prices stated in the Statement of Work shall be deemed to have been based on information derived from such survey or inspection of the area and upon knowledge of conditions existing in the area. In addition, no additional compensation will be paid for the usual or ordinary work associated with subsurface objects specifically identified by the Company in a Statement of Work or on any map or other documentation delivered by the Company to Contractor in connection with a SOW.

      (j)    Contractor shall at all time keep all premises, driveways and streets where it is performing Work clean of rubbish caused by Contractor's operation. Upon completion of Work in an area, Contractor and all Subcontractors shall remove all rubbish from and about the area, remove all of its tools, equipment and materials and leave the work area "broom clean" and ready for use. If Contractor or any Subcontractor does not promptly perform such clean-up, the Company shall be entitled, but not obligated, to perform or cause to be performed such clean-up and shall be entitled to charge the cost to Contractor or deduct the cost either from any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates in connection with this or any other Agreement.

      (k)    Contractor shall obtain appropriate information on the location of buried cables and utilities prior to performing any excavation or underground work required in connection with a SOW. Contractor shall be responsible for locating, exposing and protecting from damage all existing underground facilities, including, without limitation, electrical, telephone, water, gas, sewer and other utilities. Contractor shall indemnify, defend and hold harmless the Company, the Company's Affiliates, and each of their shareholders, partners, officers, directors, employees and agents from and against any and all claims, judgments, costs, liabilities, damages and expenses (including attorneys' fees) for death, personal injury and property damage, including, without limitation damage or destruction to any existing underground or other facility, caused directly or indirectly by any act or omission of Contractor or any of its Subcontractors, or any of their employees or agents and shall, at Contractor's expense, promptly repair or replace all such damaged or destroyed facilities.

Rev. December 2005

(l)    Contractor shall provide and maintain adequate bridging over any open trench created by Contractor in connection with any SOW as reasonably required to maintain vehicle or pedestrian traffic flow.  At no time shall operations in connection with the Work prevent or materially interfere with normal access to or from any public or private property. Overnight bridging on thoroughfares shall not occur without Contractor having first obtained any required governmental approval and the Company's approval. Contractor shall adequately protect adjacent property from damage, which might occur because of the Work. Contractor shall notify appropriate governmental agencies not less than forty eight (48) hours in advance (and, in any event, within any time frame required by any applicable Legal Requirement) of lane blockages or street closures.

(m)    If appropriate or otherwise required by the Company, Contractor will check all ends-of-line for proper signal levels prior to leaving the Work area each day.  Prior to commencement of a SOW, Contractor shall provide to the Company the name, telephone number and cellular or pager number of the person the Company may contact to arrange for the service assistance required by this Subsection.

(n)    Contractor shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, age, disability, veterans status or other status protected by applicable federal, state or local discrimination law. Contractor shall take affirmative action to ensure that applicants are employed, and employees are treated during employment, without regard to their race, color, religion, sex, national origin, age, disability, veterans status or other status protected by applicable federal, state or local discrimination law.

(o)    Contractor agrees that it shall not at any time during the term and any renewals of this Agreement, directly or indirectly, make, publish, or otherwise communicate, any disparaging remarks concerning Company, its marks, Company's customers, or any product or service offered or provided by Company or the cable industry generally.  In addition to the foregoing, Contractor shall not directly or indirectly offer or provide any employee, agent or representative of Company, with any gift, gratuity, or any other form of compensation, nor shall Contractor during the term and for one (1) year thereafter, hire, recruit or solicit for employment, any Company employee or representative.

(p)    If a SOW involves service installation, Audits, Disconnects, service calls or other Work requiring access to the home or business of one or more of the Company's customers, it shall be Contractor's sole responsibility to ensure compliance with the terms of any "on time" customer guarantee program that the Company has instituted in the Community. Contractor shall ensure that each installation and service call appointment is performed within the scheduled time frame for such Work, as guaranteed to the Company's customers in any "on time" customer guarantee program. If Contractor fails to perform such work in compliance with any part of the Company's "on time" guarantee program, Contractor shall reimburse the Company for any costs incurred by the Company as a result of Contractor's failure to meet such guarantee, which costs shall include, but not be limited to, any usual installation charge that the Company must refrain from billing its customer and any amount that the Company is required to refund to its customer. The Company shall be entitled to deduct any required reimbursement from any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates in connection with this or any other agreement. In no event shall Contractor enter into

Rev. December 2005

any customer home unless an adult, age 18 or older is present, nor shall Contractor permit any customer work order to be signed by anyone who is not at least age 18.

(q)    With respect to each SOW, Contractor shall maintain for a period of three (3) years following final payment for the SOW all Contract Documents used in connection with the SOW, records of what portion of the SOW, if any, was performed by Subcontractors, and inventory records concerning the distribution of the Company's materials, if any, to Contractor and the distribution of any such materials to Subcontractors. Contractor shall be responsible to ensure that Subcontractors similarly maintain the documents described in this Subsection.

(r)    Contractor shall perform all Work in a good and workmanlike manner. All materials and supplies furnished by Contractor and any Subcontractor and incorporated in the Work shall be new and unused unless otherwise expressly agreed to in writing by the Company, and shall be fit and suitable for the purpose intended. All Work performed and all materials furnished by Contractor shall be free from defects and shall be in conformance with the Contract Documents.

(s)    Where required by the Company, Contractor shall provide all personnel having direct contact with the Company's active outside plant, drop wires, or customer connect materials, with leakage detection devices, or functional equivalents. Such devices will be activated and operational at all times during the performance of the Work. Personnel will ensure that all workmanship is free from any and all defects that would result in the radiation of signals out of the physical plant. Any damage to existing plant that results in signal leakage will be immediately reported to the Company Representative. The Company Representative will provide equipment recommendations and specifications upon request, but shall have no responsibility to provide any such equipment. All devices must be capable of detecting signal leakage on all frequency line-ups in use by the Company in the Community (HRC, IRC, and STD). Leakage detectors must be professionally calibrated annually, and checked daily for proper operation. The Company reserves the right to specify the make and model of equipment used when special circumstances dictate.

(t)    Contractor shall be responsible to the Company for the acts and omissions of its employees, agents and any Subcontractors and their employees and agents, including, but not limited to, any such person who provides any service offered by the Company, either directly or indirectly, to any person without the express permission of the Company to provide such service or who willfully manufactures, modifies, distributes, sells, offers for sale, or possesses for sale any device or any plan or kit for a device, or a printed circuit board designed in part or in whole to decode, descramble, or otherwise make intelligible any encoded, descrambled, scrambled trapped, or other non-standard signal carried by the Company. In accordance with all applicable federal and state laws, including without limitation, 47 U.S.C. § 553, the Company shall hold Contractor responsible for any theft of service acts initiated by its employees, agents, or Subcontractors, including, without limitation, obtaining from Contractor damages of not less than One Thousand Dollars ($1,000.00) per occurrence. Any recovery hereunder for theft of service is not in lieu of criminal or civil proceedings, nor any other remedies available to the Company at law or in equity.

Rev. December 2005

**7. The Company's Rights and Duties.**

(a)    The Company shall have the right, but not the duty, to enter upon each Work site and to conduct inspections of the Work at any time to ensure compliance with the Contract Documents.

(b)    The Company shall have the right to inspect and copy those Contract Documents and other records required to be maintained by Contractor and its Subcontractors pursuant to Section 6(p) above at any time upon reasonable notice.

(c)    Notwithstanding anything to the contrary stated in the Contract Documents, if Contractor fails to correct defective Work or fails to supply materials, tools or equipment in accordance with the Contract Documents, the Company may order Contractor to stop all activities in connection with this Agreement, including without limitation, the Work or any portion of the Work, until the cause for such order has been eliminated. Further, if Contractor defaults or neglects to carry out the Work in accordance with the Contract Documents, or fails to perform any provision of the Contract Documents, the Company shall be entitled to exercise its remedies as provided in Section 16 below.

(d)    The Company may, without liability at law or in equity, suspend or stop any SOW upon written notice to Contractor, effective immediately upon receipt by Contractor of such notice.

**8.    Compliance With Laws.**

(a)    The Work, and all activities of Contractor in connection with, in furtherance of or in any way related to this Agreement or the Work, shall be performed and completed in strict compliance with all Legal Requirements including, without limitation, (i) all applicable utility construction requirements, (ii) rules, regulations and requirements of the Federal Communications Commission, Environmental Protection Agency, Department of Transportation and Federal Aviation Administration, (iii) the National Electric Code of the National Fire Protection Association, (iv) the National Electric Safety Code, (v) rules of the Occupational Safety and Health Administration, (vi) the Cable Communications Policy Act of 1984, as amended, (vii) the Telecommunications Act of 1996, (viii) requirements of any applicable utility company pole attachment or joint user agreements and (iv) requirements of all franchises granted to the Company which cover the area in which the Work is to be performed (the "Franchises").

If required by the provisions of any franchise (the "Franchise") granted to the Company in the area where the Work hereunder is to be performed, or if required for any other reason, Contractor shall have in effect as of the date hereof an Equal Employment Opportunity/Affirmative Action Plan which conforms with the guidelines contained in the Franchise or with any applicable federal, state or local law, rule or regulation, including without limitation Executive Order 11246, as amended, modified and supplemented. In addition to the foregoing, to the extent applicable to the Contractor or its Work or services hereunder, Contractor shall comply with all provisions of Executive Order 13201, as amended, modified and supplemented and all related implementing regulations and orders of the Secretary of

11612161214 - 7/7/2008 1:57:09 PM

Labor, relating the posting of any notifications of employee rights regarding the payment of union dues and fees.

(b)    Contractor represents and warrants that it has complied and will continue to comply during the term of this Agreement with the Immigration Reform and Control Act of 1986 (the "Immigration Act"). Without limiting the scope of such representation and warranty, Contractor specifically represents and warrants that (i) it has not hired since November 6, 1986, and will not hire at any time in the future, "unauthorized aliens," as defined in 8 C.F.R. § 274a.1(a), to perform any portion of the Work and (ii) it will comply with the verification requirements of 8 C.F.R. § 274a.2 with respect to each of its employees hired after November 6, 1986 who perform any portion of the Work.   Contractor agrees to indemnify the Company for any penalties imposed on the Company (and any legal and other expenses incurred by the Company) arising out of the violation of the Immigration Act or of regulations issued pursuant thereto by Contractor or any Subcontractor, or arising out of any finding that one or more of Contractor's (or any subcontractor's) employees are found to be unauthorized to work as assigned.

(c )    Contractor immediately shall notify the Company in writing if it, or any of its employees, agents or Subcontractors, believes that any part of the Work or any requirements contained in any of the Contract Documents violates any Legal Requirement.

9.    **Payment.** The Company agrees to pay Contractor for completed Work included in a SOW on the basis of the rates or amounts set forth in the Statement of Work, as follows:

(a)    Unless otherwise provided in the SOW, on a weekly basis during the Term of this Agreement, Contractor shall prepare and deliver an invoice to the Company, at the office indicated on the Statement of Work, itemizing by each Purchase Order all of the Work completed during the preceding week and all of the Contractor-provided materials used by Contractor during the preceding week ("Invoice"). Throughout the Term and for a period of three (3) years thereafter, Contractor shall also maintain accurate inventory records of all Company-provided materials, which records shall be subject to Company's audit upon at least five (5) days advance notice.  Contractor acknowledges and agrees that Company may at is option, retain an amount up to ten percent (10%) of the value of the Work performed and materials used during the period of the Invoice, which ten percent (10%) shall be retained by the Company for the due and punctual performance of Contractor's obligations in the Contract Documents (the "Retained Amount"). The Company may retain the Retained Amount until Completion of a SOW, as, described in Section 12 of this Agreement.  Each Invoice shall indicate the full amount of the Invoice before subtraction of the Retained Amount, the amount subtracted as Retained Amount from the Invoice, and the total aggregate Retained Amount so far for each SOW.   Contractor shall submit with each Invoice completed copies of any other reports or forms requested by the Company (including, without limitation, Weekly Construction Tracking Forms and Weekly Construction Summaries).

(b)    The submission of an Invoice by Contractor shall act as an express representation and warranty by Contractor that the Invoice is accurate in all respects (including without limitation any indication of Work performed and materials supplied by Contractor), that all information contained on reports and forms requested by the Company and submitted with the

Rev. December 2005

Invoice is true and correct and that Contractor has inspected all Work covered by the Invoice for conformance with the Contract Documents.

The Company shall have forty-five (45) calendar days after receipt of the Invoice to either approve or disapprove the Invoice. If the Invoice is approved by the Company ("Approved Invoice"), the Company shall process the Invoice for payment. If the Invoice is not approved by the Company ("Disapproved Invoice"), the Company shall, within forty-five (45) calendar days after receipt of the Invoice, submit to Contractor an explanation for disapproval of the Invoice which explanation may include a written list of defects ("Gig Sheet"), and Contractor shall remedy the problems with the Invoice, which remedy shall include diligently performing any corrections, additions or other Work needed to correct any Work identified by the Gig Sheet, within ten (10) working days from the date of delivery of the Gig Sheet to Contractor.

(c) No acceptance of the Work by the Company shall limit any indemnities, warranties or guarantees to the Company under the Contract Documents, regardless of any inspection made, and regardless of whether a defect or deviation is latent or patent, and the Company shall have the right to challenge any Invoice previously paid by the Company and seek a refund from Contractor. Submission by the Company of a Gig Sheet shall not in any way be deemed to be a waiver by the Company of any other defects or deficiencies in the Work, which may not be specifically identified on the Gig Sheet.

(d) The Company reserves the right to withhold payment of all or any portion of a Disapproved Invoice until all deficiencies in the Work noted on the Gig Sheet or Gig Sheets are corrected. If the Company elects, which election shall be made by the Company at its sole discretion, to pay the approved portion of any Disapproved Invoice, then the Invoice shall be approved for payment less the value of the defective portion of the Work. No payment of any part of an Invoice shall be deemed acceptance of the unpaid portion of the Invoice, or be deemed to be a waiver by the Company of any defects or deficiencies in the Work covered by the Invoice.

(e) Contractor shall not stop work by reason of or on account of any withholding by the Company of any amount from any Invoice, and shall not stop work during the pendency of any dispute with the Company.

(f) The Company shall not be obligated to reimburse Contractor for Work invoiced more than 90 calendar days after completion of the Work.

(g) At the same time as Contractor's submittal of the final Invoice for a SOW, Contractor shall deliver, or cause to be delivered to the Company:

(i)      If applicable, as-built maps and maps containing termination readings for the Work performed, which maps shall indicate (A) bonding, grounds, driven grounds, power verticals, anchors, guys, power supplies, extension arms, hand holes, vaults, pedestals, risers, conduit size, cable splices, types and sizes of cable and any other information requested by the Company and (B) all revisions to any original maps provided by the Company to Contractor as a part of the Work Documents necessary to accurately reflect the actual construction of the

SOW including, without limitation, changed tap values, changed equalizer and attenuator pad values, changed locations of electronic equipment and rerouting of cable; and

          (ii)     A reconciliation of all Invoices delivered by Contractor to the Company in connection with the SOW to a total as-built Bill of Materials indicating all materials supplied by the Company and by Contractor that were incorporated into the SOW and to as-built maps for the SOW, which reconciliation shall include both materials used in connection with the SOW and work completed as a part of the SOW.

          (h)   Where the Company has elected a Retainage, within thirty (30) calendar days following Completion, Contractor shall submit to the Company an Invoice for Net Retainage. For purposes of this Agreement, Net Retainage shall equal the Retained Amount for the SOW as adjusted for any overpayment or underpayment of Invoices by the Company pursuant to the Company's Reconciliation and as adjusted for any deductions from the Retained Amount to which the Company is entitled pursuant to the Documents. Net Retainage shall be payable by the Company (or by Contractor, as the case may be) within sixty (60) calendar days after receipt by the Company from Contractor of the Invoice for Net Retainage.

**10.    Unavoidable Delays.**

        (a)     Contractor shall be excused from any delay in completion of the Work that is caused by Unavoidable Delays. Contractor shall notify the Company in writing of the occurrence of any Unavoidable Delay within three (3) calendar days after the initial occurrence thereof and, failing such notice, Contractor shall be deemed to waive any right to an extension of time to complete the Work on account of the Unavoidable Delay. No act or default by Contractor nor any controversy or dispute of any kind between Company and Contractor shall constitute a cause for delay or stoppage of the Work.

        (b)     Notwithstanding anything to the contrary herein, the Company shall have the right, in the event Contractor is unable to proceed for any reason for a period of five (5) consecutive work days or more on account of one or more Unavoidable Delays, to notify Contractor in writing during, or so long as such Unavoidable Delay is continuing, at any time after such five (5) day period, of the suspension of any SOW. Upon such notification, Contractor shall have the right to remove its crews and, if appropriate under the circumstances, equipment, for a period coextensive with the expected delay. As soon as possible under the circumstances, the Company shall give Contractor written notice of resumption of the SOW, and Contractor shall have ten (10) working days to return crews and equipment to the Work site and to recommence the Work. If the Company suspends Work in accordance with this Section, Contractor shall not be deemed to be in default for any delay arising out of the period of suspension. Extension of the Completion Date shall be Contractor's sole and exclusive remedy for any suspension of Work under this Subsection.

**11.    Subcontracts.** No subcontracting of any of the Work shall release Contractor from any of its obligations contained in the Documents.

**12.    Completion.** TIME IS OF THE ESSENCE. Contractor shall complete the Work on or before the Completion Date set forth in the Statement of Work.

Rev. December 2005

13.    **Insurance**. Contractor and, unless otherwise specified by Company in writing, each of Contractor's subcontractors, shall obtain and maintain throughout the term of this Agreement insurance with coverage and limits as follows:

(a)    Workers' Compensation and Occupational Disease Insurance: At statutory limits as provided by the state in which the Work is to be performed, and Employer's Liability Insurance at a limit of not less than One Million Dollars ($1,000,000) for all damages arising from each accident or occupational disease for each occurrence;

(b)    Comprehensive General Liability Insurance: Covering Operations and Premises Liability; Contractor's Protective Liability; Completed Operations; Product Liability; Contractual Liability; Personal Injury; Property Damage caused by explosion, collapse and underground damage; and Broad-Form Property Damage Endorsement. The limits of such liability insurance shall be no less than One Million Dollars ($1,000,000) combined single limit of liability for each occurrence;

(c)    Comprehensive Automobile Liability Insurance: Covering all owned, hired or non-owned vehicles, including the loading or unloading thereof, with limits no less that One Million Dollars ($1,000,000) combined single limit of liability for Automobile Bodily Injury, Personal Liability and Automobile Property Damage for each occurrence; and

(d)    Umbrella Excess Liability: Coverage in an amount no less than Five Million Dollars ($5,000,000) for each occurrence.

13.1    (a)    All insurance required herein, shall be carried with companies satisfactory to the Company, licensed to do business in the jurisdiction where the Work hereunder is to be performed, and such policies shall name the Company entity first referenced above and its parents, affiliates and subsidiaries and its and their officers, directors, employees and agents as additional insured parties.

(b)    **CONTRACTOR SHALL NOT COMMENCE WORK UNDER THIS AGREEMENT UNTIL IT HAS OBTAINED ALL INSURANCE REQUIRED HEREUNDER. CONTRACTOR SHALL NOT ALLOW ANY SUBCONTRACTOR TO COMMENCE WORK UNTIL SUCH SUBCONTRACTOR HAS OBTAINED ALL INSURANCE REQUIRED UNDER THIS SECTION 13, NOR SHALL CONTRACTOR MAKE ANY OTHER ARRANGEMENT WITH ANYONE FOR THE PERFORMANCE OF ANY WORK CONTEMPLATED HEREBY WHICH DOES NOT EMBODY THE SUBSTANCE OF THESE PROVISIONS CONCERNING INSURANCE PROTECTION FOR COMPANY. RENEWAL CERTIFICATES OF INSURANCE MUST BE FILED PRIOR TO POLICY EXPIRATION SO THAT A CURRENT CERTIFICATE IS ON FILE WITH COMPANY AT ALL TIMES DURING THE TERM OF THIS AGREEMENT.**

(c)    Contractor agrees that Company may, from time to time during the term of this Agreement, require that additional insurance be obtained and maintained in amounts reasonably related to the scope and the nature of the Work to be performed under this Agreement.

Rev. December 2005

(d)    Each insurance policy required hereunder, shall provide that it will not be canceled or amended except after thirty (30) days advance written notice to Company, mailed to the address indicated herein, and the policy, policy endorsements and certificates of insurance shall contain the following endorsement: "It is hereby understood and agreed that any material change to this policy, cancellation of this policy, or the intention not to renew the policy shall not be effective unless notice thereof has been provided to Company by registered mail at least thirty (30) days prior to such change, cancellation or non-renewal."

(e)    In the event of any cancellation or any policy change not acceptable to Company, Company reserves the right to provide replacement insurance coverage and to charge any premium expense therefore to Contractor and to deduct such cost from any amounts due or to become due to Contractor hereunder.

(f)    The liability of Contractor or any Subcontractor shall not be limited by said insurance policies or the recovery of any amounts thereunder.

14.    **Contractor's Warranties**. Contractor, in addition to its other obligations as set forth in the Contract Documents, covenants with and represents and warrants to the Company that:

(a)    It is experienced in broadband distribution system construction, installation, Audit or Disconnect work as described in any Statements of Work executed by Contractor and has available sufficient experienced linemen, supervisors and other personnel and tools, equipment and other items necessary to perform the Work pursuant to the Contract Documents in an efficient and timely manner.

(b) With respect to any individual who is assigned by Contractor or by any Subcontractor to perform Work or any part of which requires entrance by the individual onto private property owned by a customer of the Company or by any other private citizen of the Community or Company's property, contractor warrants that, and (to the extent available by law) agrees, upon written request by the Company to provide evidence that:

        i.    Contractor has investigated and has determined that such individual is qualified, able and suitable to perform the duties assigned in a good and workmanlike manner and with care and concern for the Company, the Company's customers, third parties and any of their property;

        ii.   Contractor or the Subcontractor performing Work hereunder has performed a background investigation on such individual, including but not limited to, a check of felony and misdemeanor criminal convictions in all counties where such person has resided for the seven (7) year period immediately proceeding the date of hire with Contractor, using the services of a reputable and duly certified investigative agency. Persons convicted of a misdemeanor offense shall not be assigned to perform any of the Work without the prior written approval of the Company and under no circumstances shall persons (i) convicted of a

Rev. December 2005

felony offense; (ii) for whom there is an outstanding arrest or bench warrant; or (iii) for whom there are pending criminal charges that have not be adjudicated, be assigned to perform Work hereunder;

iii. Any individual who is assigned by Contractor or by any Subcontractor to drive a motor vehicle in connection with any Work shall have a valid motor vehicle license for the type of vehicle driven, and shall be included for coverage under Contractor's or the Subcontractor's policy of automobile liability insurance. All Department of Transportation, local, state and other motor vehicle requirements must be met and satisfied at all times while such individuals perform the Work hereunder. In addition, Contractor or the Subcontractor shall check the driver records of such individual for all states where the Work will be performed and any individual who does not possess a valid driver's license and otherwise meet all driving requirements of such state(s) shall not be permitted to perform the Work.

(c) Contractor will review, inspect and be solely responsible for the Work performed pursuant to the Contract Documents so as to assure safe working conditions for Contractor's employees and agents and those of its Subcontractors.

(d) Contractor is familiar with all Legal Requirements pertaining to the Work, and the Work will comply fully with all Legal Requirements.

(e) Upon Completion of each SOW, Contractor shall furnish the Company with copies of all warranties, guarantees and operating manuals relating to materials and equipment installed as a part of the SOW. Contractor hereby assigns to the Company all rights and actions of warranty that Contractor or any Subcontractor may have against prior owners, manufacturers, retailers or any other person or entity in connection with any materials or equipment installed as part of the Work.

(f) Contractor hereby warrants for a period of one (1) year (or longer, if so provided by law, and to the extent provided by law) from and after the date of Completion of each SOW that all labor, workmanship, components, materials or other parts of the SOW will be free from defects in material and workmanship under normal use and service. Contractor shall, at its own expense, repair or replace any defective components or parts supplied by Contractor or any Subcontractor. In addition, provided that the defect is the result of, or is any way caused by, any act or omission of Contractor or any Subcontractor, Contractor shall, at its own expense, repair or replace any defective components or parts supplied by the Company. Such repairs or replacement parts are warranted for one (1) year from the date of incorporation in the Work or the remainder of the original warranty period, whichever is longer. Contractor will pay all reasonable costs (including without limitation attorneys' fees) incurred by or on behalf of the Company in identifying a defect found to be the responsibility of Contractor. Upon notice from the Company, Contractor will immediately correct and remedy any defects occurring during the

warranty period without cost or expense to the Company. Nothing contained herein, however, shall be construed to define or limit the rights of the Company as otherwise provided by law or elsewhere in the Documents in the event such defects occur. After construction is completed and during the balance of the warranty period, the Company may choose to have its agents, employees or other contractors perform any required replacement or repairs. If the Company or its agent performs the repairs or replacement, the Company shall invoice Contractor for the Company's reasonable costs, including without limitation labor costs, and Contractor shall pay the Company for such costs within thirty (30) days after receipt of an invoice or, at the Company's option, the Company may deduct such costs from any Retained Amount or from any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates in connection with this or any other agreement. With respect to installation, Audit or Disconnect work, if the Company discovers defects in the Work within one (1) year after Completion of the installation, Audit or Disconnect, the Company may require Contractor to correct the defects at no expense to the Company, or may elect to have the Work corrected by the Company's personnel or other contractors of the Company and charge the cost thereof to Contractor as provided above.

(g)     Contractor will take all steps necessary or appropriate to ensure that its Subcontractors, if any, comply with the Contract Documents.

(h)     Contractor warrants that it shall protect against property damage and personal injury at all locations where Work is performed. Contractor will answer any complaint regarding property damage or any other deviation from the standards set forth in the Contract Documents within twenty-four (24) hours after notice of such complaint, and will remedy the property damage (by repair, reimbursement or contract for repair) within five (5) business days after notice. Contractor shall keep a permanent log of all complaints and their remedies, and shall make such log available to the Company at any time upon request and upon Completion of each SOW.

(i)     All representations, warranties and indemnifications of Contractor contained in the Contract Documents shall survive the termination of the Contract Documents for a period of five (5) years.

(j)     No individual who is performing Work shall take or use any equipment, material or information which is the property of the Company unless expressly approved by the Contract Documents or otherwise approved in writing by the Company.

(k)     Contractor acknowledges that the Company may, from time to time, request that Contractor provide a certification of its compliance with the terms and conditions of this Agreement, including without limitation, as relate to the requirements under these terms and conditions. Contractor agrees to provide said certification, in a form acceptable to Company, within ten (10) days of Company's request therefor.

15.     **Indemnification.** Contractor shall indemnify and hold harmless, and at the Company's election defend, the Company, the Company's Affiliates, their successors and assigns and each of their partners, officers, shareholders, directors, employees, agents and Affiliates from and against:

Rev. December 2005

(a)    Any and all mechanics' and materialmen's liens, and all costs, attorneys' fees and expenses incurred in connection with any such liens, which arise by reason of or are related to the Work or any part thereof, as more particularly provided in Section 6 (c) above; and

(b)    Any and all claims, judgments, liabilities, damages, expenses, fines, losses, demands, actions, lawsuits, executions and costs (including but not limited to attorneys' fees and court costs) arising out of or in connection with any of the following:

       i.   Performance of the Work by Contractor or any Subcontractor, or any agent, servant, employee or representative of Contractor or any Subcontractor;

      ii.   Any breach by Contractor or any Subcontractor of the terms of the Contract Documents;

     iii.   Any breach by Contractor or any Subcontractor of any warranty or representation in the Contract Documents;

     iv.   The negligence or other wrongdoing on the part of any employee, agent, servant or representative of Contractor or any Subcontractor;

      v.   The termination, disturbance, interruption or other interference with services of any type of utility or other public or private facility damaged, harmed or disturbed or caused to be disturbed by Contractor, any Subcontractor or any of their agents, servants, employees or representatives;

     vi.   Any injury, damage or loss to persons (including injury to Contractor's employees and agents and the employees and agents of any Subcontractor or material supplier) or property, including without limitation the Company's property, occurring during, arising from or arising in connection with (A) the Work, including without limitation any defective, non-conforming or omitted Work (B) the entry upon or possession of Work site by Contractor or its Subcontractors or (C) the acts or omissions of Contractor, any Subcontractor or the agents, employees, or invitees of Contractor or any Subcontractor or any other person for whom Contractor or any Subcontractor is responsible;

    vii.   Any contractual indemnity obligation of the Company to any third party arising out of the injuries, damages and losses specified in Section 15(b)(vi) above;

   viii.   Any acts or omissions of Contractor which would cause Contractor's independent contractor status to be jeopardized; or

Rev. December 2005

ix. Any claims by third parties for acts or omissions committed by Contractor or any Subcontractor as an alleged agent of the Company.

16. **Default; Remedies.**

(a) **Events of Default**. The following shall constitute Events of Default: (i) failure to complete the Work within the time specified, (ii) failure to comply with any provision of the Contract Documents, (iii) filing of a petition under any bankruptcy act by or against Contractor (which petition shall not have been dismissed within thirty (30) calendar days thereafter), execution by Contractor of an assignment for the benefit of creditors, appointment of a receiver for the assets of Contractor, or action by Contractor to take advantage of any applicable insolvency or any other like statute; (iv) failure of Contractor to make prompt payment to a Subcontractor or material supplier for materials or labor (unless such payment is withheld because of failure by such Subcontractor or material supplier to comply with the terms of its subcontract or purchase order agreement); (v) the filing of any lien in connection with the work or services contemplated by this Agreement; or (vi) breach of any covenant, representation, warranty or other provision contained in the Contract Documents.

(b) **Remedies**. In the event of a Default which is not cured within three (3) calendar days after delivery to Contractor of written notice generally describing the Event of Default (unless the Event of Default, by its nature, cannot be cured, in which event no notice and cure period shall be required), the Company shall have the right to recover any and all damages suffered by it by all means available to it at law or in equity, including without limitation the Uniform Commercial Code, and by setoff against any Retained Amount or against any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates in connection with this or any other agreement. Without prejudice to any such rights and remedies, the Company shall have the right to do any one or all of the following: (i) terminate this Agreement and/or any SOW, (ii) take possession of any or all Work sites and any materials located on each Work site, whether or not purchased by Contractor and (iii) perform or cause to be performed any one or more of Contractor's obligations and either charge the cost to Contractor or deduct the cost from any Retained Amount or from any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates in connection with this or any other agreement. In addition to any of the remedies set forth above or elsewhere in the Contract Documents, if the Company is assessed any fines or penalties by any Governmental Authorities on account of the quality or progress of the Work, Contractor shall reimburse the Company for such fines or penalties or, at the Company's option, the Company may deduct such sums from any Retained Amount or from any amount owed by the Company or any of its Affiliates to Contractor or any of its Affiliates pursuant to this or any other agreement.

17.    **Notices.** All notices, demands, requests or other communications given under this Agreement shall be in writing and be given by personal delivery, certified mail, return receipt requested, or nationally recognized overnight courier service to the address set forth below or as may subsequently in writing be requested.

If to Contractor:

      MasTec North America, Inc.
      12751 Westlinks Drive
      Fort Meyers, FL 33913
      Attn.: Group President

With a copy to:
      MasTec, Inc.
      800 Douglas Road
      Coral Gables, FL 33134
      Attn: General Counsel

If to the Company:

      Comcast Cable Communications Management, LLC
      P.O. Box 5147 (or 12647 Alcosta Blvd., Suite 200 for overnight delivery)
      San Ramon, CA 94583
      Attn.: Contracts Manager

With a copy to:

      Comcast Cable Communications, LLC
      1500 Market Street
      Philadelphia, PA 19102
      Attn.: General Counsel

18.    **Termination.** This Agreement, or any one or more Statements of Work issued pursuant to this Agreement, may be terminated by the Company, without liability at law or in equity, upon written notice upon the happening of any of the following events:

      a.  The occurrence of any Event of Default, as provided in Section 16;

      b.  Termination of any Franchise or governmental or other authorization necessary to operate any of the Company's broadband distribution systems; or

      c.  At any time without cause or for convenience upon thirty (30) days prior written notice to Contractor.

19.    **Payment and Performance Bonds.** The Company may require Contractor to secure performance and labor and material payment bonds from a surety or sureties approved by the Company covering Contractor's performance under the Contract Documents. The premiums for

Rev. December 2005

such bonds shall be paid by Contractor. Any such requirement shall be expressly stated in the Statement of Work.

20.   **Taxes.** All taxes that may be levied on Contractor in connection with the Work shall be the sole responsibility of Contractor, including without limitation all applicable taxes on payments made to Contractor pursuant to this Agreement.

21.   **Risk of Loss.** Risk and expense for loss or damage to materials and Work incorporated in any SOW shall remain with Contractor until Completion of the SOW, and Contractor shall, at its expense, take such actions as are necessary to secure the Work and all equipment and materials against vandalism, damage and theft.

22.   **Limitation of Liability.** Notwithstanding any provision in this Agreement to the contrary, under no circumstance or legal theory (tort, contract or otherwise), shall the Company be liable to Contractor for any lost profits, loss of use, loss of opportunity or any other special, punitive, indirect or consequential damages (collectively, "Consequential Damages") suffered by the Contractor arising in connection with the Work, any SOW, or this Agreement.

23.   **Miscellaneous.**

       (a)   **General Applicability of Terms.** The terms and conditions of this Agreement shall apply to any construction, installation, Audit or Disconnect work undertaken by Contractor on behalf of the Company, whether or not the Work is initiated, in whole or in part, upon verbal instructions or agreements, and notwithstanding the parties' failure to execute or maintain all of the Work Documents required by this Agreement.

       (b)   **Independent Contractor.** Contractor enters into this Agreement as, and shall continue to be, an independent contractor of Company. Contractor understands and agrees that it, under no circumstances, shall be or become an employee, agent, partner or principal of Company while this Agreement is in effect. This limited appointment shall not create a joint venture, franchise, or partnership or agency relationship at law or otherwise. Contractor hereby waives the benefit of any state, provincial, or federal laws or regulations dealing with the establishment and regulation of franchises.

       (c)   **Relationship of Parties.** Each party acknowledges that it has separate responsibility for all applicable federal, state and local taxes for itself and any of its employees and each party agrees to indemnify and hold the other harmless from any claim or liability therefor. Without limiting the generality of the foregoing, Contractor shall not be treated as an employee of Company for state or federal income tax purposes, nor will Contractor be an employee of Company for purposes of the Federal Unemployment Tax Act, Federal Insurance Contributions Act, the Social Security Act or any other federal, state or local unemployment or employment security act. Each party understands and agrees that its respective employees shall not be entitled to participate in health or disability insurance, retirement or pension benefits, if any, to which employees of the other party may be entitled. Neither party is authorized to make any promise, warranty or representation on the other party's behalf with respect to the Work or to any other matter, except as expressly authorized in writing by the other party.

Rev. December 2005

116121612 AM - 7/7/2008 1:57:09 PM

(d)    **Waiver**. The waiver by either party of a breach or violation of, or failure of either party to enforce, any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach or violation or relinquishment of any rights under any of the Contract Documents.

(e)    **Binding Effect; Rights of Affiliates**. This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, successors, representatives and assigns. Notwithstanding the foregoing, this Agreement may not be assigned by Contractor without the prior written consent of the Company. Notwithstanding the foregoing or any other provision contained in the Contract Documents, Contractor acknowledges and agrees that all rights granted to the Company in the Contract Documents accrue to the benefit of the Company and each of its Affiliates and that each Affiliate of the Company shall have the right to enforce the Contract Documents (including without limitation this Agreement) on its own behalf.

(f)    **Headings; Exhibits**. The headings of paragraphs in this Agreement are for convenience only; they form no part of this Agreement and shall not affect its interpretation. All schedules, exhibits or attachments referred to in this Agreement shall be incorporated in and constitute a part of this Agreement.

(g)    **Integration**. This writing represents the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes any and all previous agreements of whatever nature between the parties with respect to the subject matter; it may not be altered or amended except by an agreement in writing signed by both parties.

(h)    **Counterparts**. This Agreement may be executed and delivered in counterparts, all of which taken together shall constitute a single instrument.

(i)    **Severability**. If any part of any provision of this Agreement is invalid or unenforceable under applicable law, the provision shall be ineffective only to the extent of such invalidity or unenforceability without in any way affecting the remaining parts of the provision or this Agreement.

(j)    **Confidentiality**.    All information regarding the Company's engineering, marketing, construction and/or operational activities are confidential and proprietary. All such information, however gained, shall be held by Contractor in the strictest confidence and not revealed to any third party. Upon completion, termination of this Agreement or Company's request, Contractor shall return all Confidential Information and all copies thereof, in all forms and media, including without limitation, written and electronic forms.

(k)    **Federal Government Contract Provisions**. The following provisions regarding equal opportunity, and all applicable laws, rules, regulations and executive orders specifically related thereto, including applicable provisions and clauses from the Federal Acquisition Regulation and all supplements thereto are incorporated herein, as they apply to Contractor's performance of the Work which is performed under specific U.S. Government contracts: 41 C.F.R. Part 60-1, Obligations of Contractors and Subcontractors, Sections: 41 C.F.R. 60-1.4, Equal Opportunity Clause; 41 C.F.R. 60-1.7, Reports and Other Required Information; 41 C.F.R. 60-1.8, Segregated Facilities; 41 C.F.R. Part 60-250, Affirmative Action and Nondiscrimination

Rev. December 2005

11/6/21612.M - 7/7/2008 1:57:09 PM

Obligations of Contractors and Subcontractors Regarding Special Disabled Veterans and Veterans of the Vietnam Era, Section 41 C.F.R. 60-250.4, Coverage and Waivers (for contracts and subcontracts of $10,000 or more); and, from 41 C.F.R. Part 60-741, Affirmative Action and Nondiscrimination Obligations of Contractors and Subcontractors Regarding Individuals with Disabilities, Section 41 C.F.R. 60-741.4, Coverage and Waivers (for contracts and subcontracts in excess of $10,000). In addition, Statements of Work executed hereunder containing a notation that the Work is intended for use under Government contracts shall be subject to such other Government provisions as are included in the Statement of Work.

The parties have executed this Agreement as of the Effective Date.

COMCAST CABLE COMMUNICATIONS          MASTEC NORTH AMERICA, INC.
MANAGEMENT, LLC

By: _____         By: _____

Print Name: _Patrick O'Hare_          Print Name: _Andrew J. Healey_

Title: _VP Engineering & Operations_  Title: _President_

        5/8/06

Rev. December 2005

**EXHIBIT A**
**STATEMENT OF WORK**

MCA Number: BAY - 050906 - 01
SOW Number: 01
Project Number:_____
Construction Task: Rule 20 Work

Pursuant to the above referenced Master Construction Agreement (the "Agreement") between Comcast Cable Communications Management, LLC and its affiliates ("Company") and MasTec North America, Inc. ("Contractor") Company and Contractor agree that Contractor shall perform the Work set forth in this Statement of Work (the "Project") in accordance with the terms and conditions set forth in this Statement of Work and the Agreement. All capitalized terms not defined in this Statement of Work shall have the meanings given to them in the Agreement.

**1. Name of Community(s) and/or Franchise Areas in which the Work will be performed:**

City and County of San Francisco

**2. Name of Comcast Representative:**

Gino Graziani
Construction Manager
Comcast
2055 Folsom St.
San Francisco, CA 94110

Office: (415) 503-4506
Cell: 415-859-1159
Fax: 415-252-6332
E-Mail: gino_graziani@cable.comcast.com


**For Construction**
Ray Clarke
Director of Construction
Comcast
12647 Alcosta Blvd., Suite 200
San Ramon, CA 94583

Phone: (925) 973-7055
Mobile: (925) 997-8969
Fax: (925) 973-7015
E-mail: Ray_Clarke@cable.comcast.com

**For Design**

1162161211 - 7/1/2008 1:57:09 PM

Dave Simmons
Director of P&A
Comcast
2500 Bates Ave.
Concord, CA 94520

Phone: (925) 349-3377
Fax: (925) 349-1145
Mobile: (925) 997-0669
Dave_Simmons@cable.comcast.com

### 3. Comcast Address To Which Notices should be delivered:

The Representative listed in #2 above.

With a copies to:

Comcast Cable Communications, LLC
1500 Market Street
Philadelphia, PA 19102
Attn: General Counsel

And:

Comcast Cable Communications Management, LLC
P.O. Box 5147 (or 12647 Alcosta Blvd., Suite 200, for overnight delivery)
San Ramon, CA 94583
Attn: Contracts Manager

### 4. Comcast Address To Which Invoices Should be delivered:

For Construction

Please send invoices to the appropriate contact in each area:

Delta Valley
John Goucher
Construction Manager
Comcast
2500 Bates Ave.
Concord, CA 94520

Phone: (925) 349-3413
Mobile: (925) 766-2637
Fax: (925) 349-3549
E-mail: John_Goucher@cable.comcast.com

East Bay
Bruce Muller
Construction Manager

Comcast
8470 Pardee Dr
Oakland, CA 94621

Phone: (510) 567-9213
Mobile: (510) 816-4263
Fax: (510) 567-9208
E-mail: Bruce_Muller@cable.comcast.com

North Bay
Jim Bordessa
Network Construction Manager
Comcast
1179 N McDowell Blvd.
Petaluma, CA 94954

Phone: (707) 773-4005
Mobile: (707)-344-1376
Fax: (707) 773-2551
E-mail: Jim_Bordessa@cable.comcast.com

South Bay
Doug Nolan
Manager of Construction
Comcast
1900 S. 10th Street
San Jose, CA 95112

Phone: (408) 918-6039
Mobile: (408) 426-7707
Fax: (408) 294-9572
E-mail: Doug_Nolan@cable.comcast.com

West Bay
Don Johansen
Construction Manager
Comcast
1691 Bayport Ave.
San Carlos, CA 94070

Phone: (650) 551-7385
Mobile: (650) 826-1326
Fax: (650) 329-8145
E-mail: Donald_Johansen@cable.comcast.com

For Design
Dave Simmons
Director of P&A
Comcast
2500 Bates Avenue
Concord, CA 94520

Phone: (925) 349-3377
Fax: (925) 349-1145
Mobile: (925) 997-0669
E-mail: Dave_Simmons@cable.comcast.com

5.  Name of Contractor's Representative:

Andy Healey
President
MasTec North America, Inc.
12751 Westlinks Drive, Suite 4-6
Fort Myers, FL 33913

Office number: (239) 768-5001
E-Mail: andy.healey@mastec.com

6.    General Description of the Work

7.    Specific Description of the Work

8.    Pricing: 2006 Rule 20 Work for the City and County of San Francisco

See Exhibits C and D for Pricing.

9.    Start Date for the Project:

January 1, 2006 or Per Work Orders and/or Purchase Orders issued.

10.    Completion Date for the Project:

December 31, 2006 or Per Work Orders and/or Purchase Orders to be issued.

11. Work Orders to be Provided by Comcast

Work orders or SRO's to be provided to Contractor by Company on location.

12. Specifications for the Work:

A.    Manuals & Training Requirements

The following manuals and other documents, as revised or updated by the Company from time to time, are incorporated by reference, and set forth Specifications for the Work:

*   SDU/MDU Mobile Home Grounding Guideline Pamphlet (which in case of conflict with any other document shall be the one adhered to).
*   Construction Procedures Manual
*   Single Dwelling Unit (SDU) Installation Procedures
*   Multiple Dwelling Unit (MDU) Installation Procedures
*   Engineering Bulletins (as applicable)

- Network Architecture Manual
- Network Validation Guidelines
- NEC
- NESC
- Installation Bulletins

Regardless of whether the job is completed, no unsafe conditions shall be left behind when the Contractor leaves the jobsite.

All Contractor firms working for Company will be required to have a certified trainer on staff who has been certified by the company to train other contractor personnel in required policies and procedures.

**B.    Quality Control & Performance Standards**

Twenty percent (20%) of all work performed by Technicians must be QC'd by a supervisor or QC person working for the Contractor. Any discrepancies shall be corrected at the Contractor's own expense. Results of the QC inspections, including discrepancies, shall be turned in weekly along with the invoicing. Comcast will also QC a random percentage of the work, independent of the Contractor's own inspections. Monthly meetings will be held between representatives of the Contractor and the local Comcast management to review the QC results. A technician has 72 hours to remedy a failed QC.

**C.    Corrections and Charge backs**

Any job or part of a job performed by a Technician and not completed in accordance with Company specifications that is later corrected by the Contractor must be corrected at the Contractor's expense. This expense includes time, labor, material, and damages. Materials issued to the Technician for other jobs cannot be used to correct any discrepancies unless the material is purchased, by the Contractor, from Company. .

**D.    Damage and Complaints**

The Contractor at its expense must resolve any damage and/or complaints caused by a Contractor. Contractor should report all complaints to his/her supervisor and the Company local Project Manager or Technical Operations Manager within 24 hours. Initial contact with the injured party must be made within 24 hours, but if at all possible, the same day. Written documentation of the resolution must be given to the local Company management within 48 hours following notification of the damage or complaint. If it is not possible to resolve the damage or complaint within 72 hours or if insufficient action has been taken by the Contractor to resolve the complaint, Comcast may choose to take over management. Should this occur, Comcast may bill Contractor for the initial associated job during which the damage or loss occurred, any costs incurred in resolving the claim, including the UNICALL case fee (currently $60) and well as any settlement costs or associated charges to resolve the complaint. For each damage claim or complaint not resolved by Contractor within 72 hours, that Comcast brings in-house, Comcast may choose to bill Contractor a flat fee of One Thousand Dollars ($1,000.00).

**E.    Off-Site Offices and Staging Areas**

Contractors are required to establish their own off-site office/staging areas for their personnel and work issuance.

**F.    Driving Conduct**

Contractors are expected to drive safely and with courtesy. Contractors must not park in or block driveways unless there is no alternative. If there is no other choice, permission must be given by the owner of the premises before parking the vehicle in the customer's driveway. No additional passengers or pets may be in the vehicles while contractor is performing issued work.

**G.    Entering Yards**

Contractors may not enter any person's yard, either a customer's or non-customer's, without first making a reasonable attempt (i.e. knocking on the front door or ringing the doorbell) to gain permission from the owner of the yard. Should a Contractor enter a yard through a gate, he should take care to secure the gate behind him upon entrance and when he exits the property to avoid escaping pets.

**H.    Apparel & Appearance**

Contractor personnel must be properly outfitted and appropriately groomed for the Work.

**I.    Vehicles**

Vehicles shall have professional appearance, and shall not have excessive damage or excessive dirt. - The preferred color of vehicles is white. Vehicles used in connection with the Work must display approved the Company logo in approved locations on the vehicle. Vehicles may also display the Contractor name of Contractor.

**J.    Badges**

All Contractors must have ID badges. At no time will a Contractor be allowed to perform work under the Agreement without having a valid badge in their immediate possession and clearly displayed. The badge must clearly identify the individual wearing it, state that the individual is an employee of Contractor and that Contractor as an independent contractor of Comcast. Contractors will contact the Security Assistant to request a badge. Upon termination or change of assignment of the badge holder the badge will need to be turned back into the Security Assistant within 48 hours. The Security Department will issue a receipt for all returned badges. If the badge is not turned back in to the Security Assistant within seven (7) days of termination or change of assignment, the Contractor will be invoiced two hundred and fifty dollars ($250.00) per incident. Should Contractor lose a badge, then Contractor will be invoiced at seventy five dollar ($75.00) replacement fee per incident.

**13. Staffing and Supervision Requirements**

In addition to the requirements set forth in the Agreement, the following shall apply:

It is required that each Contractor designates one Supervisor per 15 Field Technicians. are in the field.

11621612H - 7/7/2008 1:57:09 PM

**14. List any Tools to be Provided By Comcast (all others must be provided by Contractor):**

N/A

**15.     List all Materials To Be Provided By Contractor (all others must be provided by Comcast):**

If any construction or restorative materials will be required in connection with the Project (e.g., asphalt, concrete and other construction material), Contractor shall supply all such materials and include the cost of such materials on its Invoices to Company.

**16. Designation of Whether Exhibit B of the Agreement (Branding and Identification Requirements) Applies to this Project:**

Exhibit B of this Agreement does not apply to this Project.

*The parties hereby execute this Exhibit A Statement of Work to the Broadband Installation/ Disconnection Agreement effective _____, 2006. By executing this Exhibit A Statement of Work the parties have agreed to the revised unit pricing.*

Company                                              Contractor

Comcast Cable Communications                        MasTec North America, Inc.
Management, LLC

_____                    _____
Signature                                            Signature

| Ed Marchetti |                                     | Andrew J. Healey |
Name (Typed or Printed)                              Name (Typed or Printed)

Vice President, Engineering                           President
Title                                                Title

4/28/06                                              April 27, 2006
Date                                                 Date

## EXHIBIT B

### Branding and Identification Requirements

**Branding and Identification Requirements** - The Company seeks to present a positive image to its customers and their communities. To that end, all employees and agents of Contractor and any Subcontractor shall maintain a professional, consistent appearance. If indicated on the Statement of Work, all employees and agents of Contractor and any Subcontractor shall comply, at a minimum, with the standards set forth below. Specific interpretation and decisions on compliance are to be exercised by the Company employee supervising Contractor's work.

**The Company Contractor Logo** - Contractor employee uniforms and vehicles shall be identified by proper use of logo designated and approved by the Company.

The Company may provide a pre-approved list of vendors of uniforms, decals and other uses of its logo.

If Contractor does not use a pre-approved vendor, the Company must approve an embroidery sample from the manufacturer before garments are prepared for Contractor.

If Contractor does not use a pre-approved vendor, the Company must approve production samples of the decals and the plan for placement before application to vehicles. Wherever a reference is made to Company's name or logo in connection with Contractor's performance under the Agreement, Contractor shall also identify itself as an independent contractor of Company.

**Apparel** - Employees and agents of Contractor and any Subcontractor performing the Work shall be subject to the following requirements for uniforms.

Such employees and agents must wear collared short-sleeved polo shirts or long-sleeved denim shirts at all times. T-shirts may not be worn unless covered by an approved collared shirt. If Contractor does not use a pre-approved vendor, the style, color and logo placement must be approved by the Company before garments are prepared for Contractor's or any Subcontractor's employees and agents. Polo shirts must be solid colored. All shirts must properly display the approved Company logo or be undecorated.

Pants worn must be clean, full-length, and without holes, tears or ragged edges. Pants must be blue or black denim, or blue, black or tan work pants.

Additional outerwear may be worn as appropriate to weather and working conditions. Outerwear must display the approved logo or be undecorated. Caps must display the approved logo or be undecorated. No other illustration, name, logo, brand identity or description will be present on the cap.

**Vehicles** - Vehicles shall have professional appearance, and shall not have excessive damage or excessive dirt. - The preferred color of vehicles is white. Vehicles used in connection with the Work must display approved the Company logo in approved locations on the vehicle. Vehicles may also display the Contractor name of Contractor.

**Independent Contractor** - Where any references to the Company are made under this exhibit, Contractor shall clearly indicate in writing that Contractor is acting as an independent contractor of the Company.

1162161Z.fff - 7/7/2008 1:57:09 PM

**Modification** - The requirements outlined above are not meant to be all-inclusive, and may be modified from time to time, as needed, and at the discretion of Comcast local Management and/or per Federal, State, Municipal or other Government agency order.

EXHIBIT C

Corbett IIA

## Corbett 2a Cost Summary by Participant

Submitted by MasTec                          03/20/06

| Description | Participation | TOT | |
|---|---|---|---|
| PGE Trench Gas | 8% | $ | 149,890 |
| PGE Trench Elect | 37% | $ | 693,239 |
| SBC Trench | 20% | $ | 374,724 |
| COM Trench | 27% | $ | 505,877 |
| SL Trench | 8% | $ | 149,890 |
| | | | |
| TOT Trench Cost | 100% | $ | 1,873,620 |
| | | | |
| PGE Gas | 100% | $ | 39,074 |
| PGE Conduit and Boxes | 100% | $ | 341,378 |
| SBC Conduit and Boxes | 100% | $ | 60,053 |
| COM Conduit and Boxes | 100% | $ | 40,679 |
| SL Conduit and Boxes | 100% | $ | 25,547 |
| | | | |
| TOT Material | | $ | 506,726 |
| | | | |
| TOT PROJECT ESTIMATE | | $ | 2,380,346 |
| | | | |
| **Total by Participant (Aprox)** | | | |
| TOT PGE GAS | | $ | 188,964 |
| TOT PGE ELECT | | $ | 1,034,612 |
| TOT SBC | | $ | 434,777 |
| TOT COMCAST | | $ | 546,557 |
| TOT S/L | | $ | 175,437 |
| | | | |
| Original Bid | | $ | 2,162,044 |
| | | | |
| Variance | | ($216,301.82) | |

Conduit price increased due to increased material cost to MasTec
No Curb Ramps were in original bid
No gas material/labor prices in original bid
5, 5T, 7 & 7T vaults reflect price increase given on Corbett 1
Quantities are aprox and match original bids as close as possible

116216124—7/7/2008 1:57:09 PM

## EXHIBIT C (cont.)

Project: CORBETT 2& Rule 20, San Francisco

|  |  |  |  |  | **$2,380,346** |  |
| --- | --- | --- | --- | --- | --- | --- |
| Bid Item No. |  | Bid Item Description | Unit | Bid Qty | Cost/Unit | Bid Amt |
| 1 |  | 12" WIDE JOINT DISTRIBUTION TRENCH | TF | 0 | $156.75 | $0.00 |
| 1a |  | 18" WIDE JOINT DISTRIBUTION & GAS TRENCH | TF | 4,667 | $180.00 | $840,060.00 |
| 2 |  | 24" WIDE JOINT DISTRIBUTION TRENCH | FT | 1,078 | $185.00 | $199,430.00 |
| 3 |  | 30" WIDE JOINT DISTRIBUTION TRENCH | FT | 1,715 | $192.50 | $329,752.50 |
| 4 |  | 36" WIDE JOINT DISTRIBUTION TRENCH | FT | 521 | $204.25 | $106,414.25 |
| 5 |  | 48" WIDE JOINT DISTRIBUTION TRENCH | TF | 0 | $0.00 | $0.00 |
| 6 |  | 18" WIDE SERVICE TRENCH | FT | 2,015 | $151.00 | $303,965.00 |
|  |  |  |  | 9,982 |  |  |
| 7A |  | BORE | FT | 40 | $250.00 | $10,000.00 |
|  |  | Project Ft | Ft | 10,022 |  |  |
|  |  |  |  |  |  |  |
|  | SBC |  |  |  |  |  |
| 8A |  | F/I SBC 2" PTS-66 CONDUIT | DF | 2,048 | $1.50 | $3,072.00 |
| 8B |  | F/I SBC 4" PTS-77 CONDUIT | DF | 3,697 | $3.00 | $11,091.00 |
| 8C | T | F/I SBC 15" x 24" x 26" BOX | EA | 14 | $561.30 | $7,858.20 |
| 8D | T2 | F/I SBC 30" x 48" x 34" BOX | EA | 23 | $1,156.60 | $26,601.80 |
| 8E | T3 | F/I SBC 30" x 48" x 34" BOX | EA | 6 | $1,158.65 | $6,951.90 |
| 8F | T4 | F/I SBC 30" x 60" x 34" BOX | EA | 1 | $1,487.60 | $1,487.60 |
| 8G | T3 | F/I SBC 36" x 60" x 36" BOX | EA | 1 | $2,990.12 | $2,990.12 |
|  |  |  |  |  |  |  |
|  | COM |  |  |  |  |  |
| 9A |  | F/I COMCAST 2" SCH 40 CONDUIT | FT | 11,500 | $1.50 | $17,250.00 |
| 9B | C1 | F/I COMCAST 17" x 30" x 24" BOX | EA | 34 | $528.31 | $17,962.54 |
| 9C | C2 | F/I COMCAST 5L 48 x 25 x 24" BOX | EA | 6 | $911.12 | $5,466.72 |
|  |  |  |  |  |  |  |
|  | SL |  |  |  |  |  |
| 10B |  | F/I CITY SL 2" SCH40 PVC CONDUIT | LF | 1,577 | $1.50 | $2,365.50 |
| 10A |  | F/I CITY SL 12" x 22" x 12" BOX | EA | 31 | $454.54 | $23,181.54 |
|  |  |  |  |  |  |  |
|  | PG&E Gas |  |  |  |  |  |
| 11A |  | F/INSTALL 2" GAS PIPE to include splice and test | LF | 2,791 | $14.00 | $39,074.00 |
| 11B |  | F/INSTALL 4" GAS PIPE to include splice and test | LF | 0 | $32.00 | $0.00 |
| 11C |  | F/INSTALL 6" GAS PIPE to include splice and test | LF | 0 | $42.00 | $0.00 |
|  | PG&E Elect |  |  |  |  |  |
| 11D |  | F/I PG&E 3" DB120 Conduit | | 5,500 | $3.00 | $16,500.00 |
| 11E |  | F/I PG&E 4" DB120 Conduit | | 11,000 | $4.00 | $44,000.00 |
| 11F |  | F/I PG&E 5" DB120 Conduit | | 0 | $4.50 | $0.00 |
| 11G |  | F/I PG&E 6" DB120 Conduit | | 6,700 | $8.88 | $59,496.00 |
| 11H | 2 | F/INSTALL PG&E 17" x 30" x 24" BOX | EA | 70 | $741.10 | $51,877.00 |
| 11I | 3 | F/INSTALL PG&E 26" x 36" x 24" BOX | EA | 19 | $939.68 | $17,853.92 |
| 11J | 3 | F/INSTALL PG&E 3' x 3' x 3.5' SPLICE BOX | EA | 3 | $4,755.50 | $14,266.50 |
| 11K | 5T | F/INSTALL PG&E 3' x 7' x 4.5' TRANSFORMER BOX | EA | 9 | $5,792.90 | $52,136.10 |
| 11L | 7 | F/INSTALL PG&E 4.5' x 8.5' x 6.0' SPLICE BOX | EA | 5 | $12,149.09 | $60,745.45 |
| 11L | 7T | F/INSTALL PG&E 4.5' x 8.5' x 7.3' 897 ICE BOX | EA | 2 | $12,249.09 | $24,498.18 |
|  |  |  |  |  |  |  |
| 12 |  | ROADWAY PAVING | SF | 0 | $10.00 | $0.00 |
| 13 |  | SIDEWALK | SF | 0 | $8.00 | $0.00 |
| 14 |  | CURB | LF | 0 | $25.00 | $0.00 |
| 15 |  | CURB RAMP | EA | 15 | $5,600.00 | $84,000.00 |
| 27 |  | Concrete Street (Joint to Joint) | SF | 0 | $32.50 | $0.00 |
|  |  |  |  |  |  | $0.00 |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  | $2,380,346 |

1162161211 - 7/7/2008 1:57:09 PM

## EXHIBIT C (cont.)

**Corbett 2a Original Bid Worksheet**
**Dist Trench Costs**

| | Page | TOT | SBC | PGE E | PGE G | COM | SL |
|---|---|---|---|---|---|---|---|
| | 1 | $ 257,100.28 | $ 61,683.33 | $106,771.78 | $ 18,582.24 | $ 62,166.54 | $ 7,276.08 |
| | 2 | $ 343,481.48 | $ 49,404.21 | $127,194.07 | $ 18,662.35 | $ 84,810.62 | $ 63,179.90 |
| | 3 | $ 344,555.55 | $ 72,575.27 | $127,108.90 | $ 26,128.43 | $100,146.61 | $ 17,765.07 |
| | 4 | $ 234,493.25 | $ 52,760.01 | $ 89,418.46 | $ 22,464.25 | $ 61,696.85 | $ 10,411.59 |
| | 5 | $ 219,663.40 | $ 21,100.32 | $105,980.41 | $ 31,634.88 | $ 41,207.39 | $ 19,295.68 |
| | 6 | $ 92,378.05 | $ 3,292.68 | $ 43,357.65 | $ 7,322.71 | $ 10,964.17 | $ 27,202.69 |
| Serv Trench Costs | 7 | $ 295,482.31 | $ 102,661.54 | $ 66,213.35 | - | $126,891.71 | - |
| | 8 | $ 8,009.70 | $ 766.68 | $ 5,616.04 | - | $ 1,737.88 | - |
| | | $ 1,795,162.62 | $ 364,341.93 | $665,585.85 | $125,184.95 | $489,607.77 | $145,159.27 |
| | | 100% | 20% | 37% | 7% | 27% | 8% |
| Material | | | $ 31,887.38 | $159,082.12 | | $ 8,754.50 | |
| Labor | | | $ 23,371.04 | $ 98,590.07 | | $ 26,893.72 | |
| | | | $ 55,258.43 | $256,682.19 | | $ 35,648.22 | $ 22,272.45 |
| TOT | | $ 2,162,044.81 | $ 419,600.36 | $924,270.87 | $125,184.95 | $525,556.29 | $167,432.43 |

## EXHIBIT D

### Taraval IA

## Taraval 1 Cost Summary by Participant
All material furnished by contractor                                              3/22/2008

| Description | Participation | | TOT |
|---|---|---|---|
| PGE Trench Gas | 9% | $ | 183,077.97 |
| PGE Trench Elect | 48% | $ | 976,415.86 |
| SBC Trench | 17% | $ | 345,813.95 |
| COM Trench | 22% | $ | 447,523.93 |
| SL Trench | 4% | $ | 81,367.99 |
| TOT Trench Cost | 100% | $ | 2,034,199.70 |
| | | | |
| PGE Bore Gas | 2% | $ | 6,742.11 |
| PGE Bore Elect | 64% | $ | 179,714.35 |
| SBC Bore | 4% | $ | 25,302.63 |
| Com Bore | 30% | $ | 108,640.91 |
| Next G | 0% | $ | 5,400.00 |
| TOT Bore Costs | 100% | $ | 325,808.68 |
| | | | $ 2,360,008.70 |
| | | | |
| PGE Gas | 100% | $ | 113,350.00 |
| PGE Conduit and Boxes | 100% | $ | 675,708.39 |
| SBC Conduit and Boxes | 100% | $ | 51,320.34 |
| COM Conduit and Boxes | 100% | $ | 82,514.71 |
| SL Conduit and Boxes | 100% | $ | 38,822.00 |
| TOT Material | 100% | $ | 991,715.44 |
| | | | |
| TOT PROJECT COST | | $ | 3,351,715.14 |

Aprox Cost by Participant
| | | |
|---|---|---|
| TOT PGE GAS | $ | 305,170.08 |
| TOT PGE ELECT | $ | 1,831,838.60 |
| TOT SBC | $ | 452,498.92 |
| TOT COMCAST | $ | 638,679.55 |
| TOT S/L | $ | 125,589.99 |

| | | | |
|---|---|---|---|
| | Original Bid | $ | 2,781,052.00 |
| | Variance | | ($570,663.14) |

Contributing reasons for delta
| | | | |
|---|---|---|---|
| Revisited Bore Prices xing Muni Tracks | added | $ | 170,651.00 |
| No Allowance for Gas Material and Labor | added | $ | 113,850.00 |
| Increased cost in PGE Labor for Boxes | added | $ | 114,070.00 |
| Handicap ramps missed on bid | added | $ | 43,200.00 |
| Increased Conduit Prices | added | $ | 125,000.00 |
| | | $ | 567,271.00 |

## EXHIBIT D (cont.)

Project: TARAVAL 1 Rule 26, San Francisco
All material furnished by contractor

| | | | | | **$3,261,716** |
|---|---|---|---|---|---|
| Bid Item No. | | Bid Item Description | Unit | Bid Qty | Cost/Unit | Bid Amt |
| 1 | | 12" WIDE JOINT DISTRIBUTION TRENCH | TF | 4,779 | $136.75 | $653,118.00 |
| 1a | | 18" WIDE JOINT DISTRIBUTION & GAS TRENCH | TF | 1,159 | $165.43 | $191,756.55 |
| 2 | | 24" WIDE JOINT DISTRIBUTION TRENCH | FT | 1,691 | $180.73 | $305,648.25 |
| 3 | | 30" WIDE JOINT DISTRIBUTION TRENCH | FT | 4,055 | $190.40 | $771,691.20 |
| 4 | | 36" WIDE JOINT DISTRIBUTION TRENCH | FT | 146 | $195.45 | $28,535.70 |
| 5 | | 48" WIDE JOINT DISTRIBUTION TRENCH | TF | 0 | $242.50 | $0.00 |
| 6 | | 145EA - 18" WIDE SERVICE TRENCH | FT | 550 | | $40,250.00 |
| | | | | 12,175 | | |
| 7A - 7AD | | 1,200LF - STEEL CASINGS UNDER MUNI TRACKS | LOC | 52 | | $525,900.00 |
| | | | | | | |
| 8A | | F4 SBC 2" DB120 CONDUIT | LF | 5,500 | $1.50 | $8,250.00 |
| 8B | | F4 SBC 4" DB120 Conduit | LF | 7,900 | $3.00 | $23,700.00 |
| 8C | 7 | F4 SBC 15" x 24" x 26" BOX | EA | 7 | $561.30 | $3,929.10 |
| 8D | 12 | F4 SBC 20" x 43" x 34" BOX | EA | 9 | $1,156.60 | $10,409.40 |
| 8E | T3 | F4 SBC 50" x 48" x 34" BOX | EA | 5 | $1,332.60 | $6,663.00 |
| 8F | T4 | F4 SBC 30" x 60" x 34" BOX | EA | 5 | $1,487.60 | $7,438.00 |
| 8G | T5 | F4 SBC 36" x 60" x 36" BOX | EA | 7 | $2,990.12 | $20,930.84 |
| | | | | | | |
| 9A | | F4 COMCAST 2" SCH 40 CONDUIT | FT | 24,220 | $1.50 | $36,330.00 |
| 9B | C1 | F4 COMCAST 17" x 30" x 24" BOX | EA | 65 | $528.31 | $34,340.15 |
| 9C | C2 | F4 COMCAST 5L 48 x 25 x 24" BOX | EA | 13 | $911.12 | $11,844.56 |
| | | | | | | |
| 10B | | F4 CITY 5L 2" SCH40 PVC CONDUIT | LF | 1,022 | $1.50 | $1,533.00 |
| 10A | | F4 CITY 5L 12" x 22" x 12" BOX | EA | 98 | $380.50 | $37,289.00 |
| | | | | | | |
| | | GAS | | | | |
| 11A | | F/INSTALL 2" GAS PIPE to include splice and test | LF | 0 | $0.00 | $0.00 |
| 11B | | F/INSTALL 4" GAS PIPE to include splice and test | LF | 2,345 | $22.00 | $51,590.00 |
| 11C | | F/INSTALL 6" GAS PIPE to include splice and test | LF | 1,980 | $32.00 | $61,760.00 |
| | | Elect | | | | |
| 11D | | F/I PGE 3" DB120 Conduit | | 5,500 | $3.00 | $16,500.00 |
| 11E | | F/I PGE 4" DB120 Conduit | | 6,700 | $3.60 | $24,120.00 |
| 11F | | F/I PGE 3" DB120 Conduit | | 650 | $4.50 | $2,925.00 |
| 11G | | F4 PGE 6" DB120 Conduit | | 13,300 | $8.88 | $195,864.00 |
| 11H | 2 | F/INSTALL PG&E 17" x 30" x 24" BOX | EA | 135 | $741.10 | $100,048.50 |
| 11I | 3 | F/INSTALL PG&E 24" x 36" x 24" BOX | EA | 9 | $939.68 | $8,457.12 |
| 11J | 5 | F/INSTALL PG&E 3' x 5' x 3.5' SPLICE BOX | EA | 13 | $4,755.50 | $61,821.50 |
| 11K | 5T | F/INSTALL PG&E 3' x 5' x 4.5' TRANSFORMER BOX | EA | 8 | $5,792.90 | $46,343.20 |
| 11L | 7 | F/INSTALL PG&E 4.5' x 6.5' x 6.0' SPLICE BOX | EA | 21 | $12,149.09 | $255,130.89 |
| 11L | 7T | F/INSTALL PG&E 4.5' x 8.5' x 7.5' SPLICE BOX | EA | 26 | $12,249.09 | $34,498.18 |
| | | | | | | |
| 12 | | ROADWAY PAVING | SF | | $10.00 | $0.00 |
| 13 | | SIDEWALK | SF | | $8.00 | $0.00 |
| 14 | | CURB | LF | | $33.00 | $0.00 |
| 15 | | CURB RAMP | EA | 8 | $5,400.00 | $43,200.00 |
| | | | | | | |
| | | F/I or F/Install is: Furnish all material and labor to place equipment | | | | $3,261,716 |

**EXHIBIT A**
**STATEMENT OF WORK**

MCA Number: EA4 - 050906 - 0)
SOW Number: 02
Project Number: _____
Construction Task: Newbuild/ Plant Maintenance

Pursuant to the above referenced Master Construction Agreement (the "Agreement") between Comcast Cable Communications Management, LLC and its affiliates ("Company") and MasTec North America, Inc. ("Contractor"), Company and Contractor agree that Contractor shall perform the Work set forth in this Statement of Work (the "Project") in accordance with the terms and conditions set forth in this Statement of Work and the Agreement. All capitalized terms not defined in this Statement of Work shall have the meanings given to them in the Agreement.

**1. Name of Community(s) and/or Franchise Areas in which the Work will be performed:**

San Francisco

**2. Name of Comcast Representative:**

Gino Graziani
Construction Manager
Comcast
2055 Folsom St.
San Francisco, CA 94110

Office: (415) 503-4506
Cell: 415-859-1159
Fax: 415-252-6332
E-Mail: gino_graziani@cable.comcast.com

**3. Comcast Address To Which Notices should be delivered:**

The Representative listed in #2 above.

With a copies to:

Comcast
1500 Market Street
Philadelphia, PA 19102
Attn: General Counsel

And:

Michelle Harding, Contracts Manager
Comcast
P.O. Box 5147 (or 12647 Alcosta Blvd., Suite 200, for overnight delivery)
San Ramon, CA 94583

1

4.    Comcast Address To Which Invoices Should be delivered:

Comcast
Accounting Department
1205 Chrysler Drive
Menlo Park, CA 94025
Attn : Sarah Campbell

## 5. Name of Contractor's Representative:

MasTec North America, Inc.
President
12751 Westlinks Drive #4-6
Fort Myers, FL  33913

239-985-6903
239-565-9949
239-768-0220
Andy.healey@mastec.com

## 6. General Description of the Work

Construction work in the City of San Francisco including: Post wires/Rewires/Pre-wires, GO95/Rule 20 Under-rounding, MDU/Commercial - Upgrade, Maintenance, Postwire, Rewire or New Build and other projects to be determined by the parties.

## 7. Specific Description of the Work:

Composite and line item pricing for the following construction projects:

- Post wires/Rewires/Pre-wires
- GO95/Rule 20 Undergroundings
- MDU/Commercial - Upgrade, Maintenance, Postwire, Rewire or New Build
- Other Projects TBD

These tasks are to be performed in conjunction with direction of the Comcast Engineering and Construction Coordinator responsible for that project location.

Terms and conditions for the Work:

1. Warehouse (if needed) to be provided by Contractor for Contractor needs only.  Also, all contractor employees must have cell phones and/or pagers.
2. Contractor will be responsible for all customer and/or damage claims directly related to Contractor's negligence.
3. Repair damaged plant in a timely manner when related to Contractor error and coordinate repair with system personnel.
4. All work must be performed following Comcast/TCI construction procedure manual.
5. All work must conform to all applicable city, county, state, local and National Electric Safety Codes.
6. Contractor will comply with all state Occupational Safety and Health Administration (OSHA) rules and all OSHA rules published by local agencies.

2

The "Composite Price" will be a unit cost. All work performed must meet all the requirements of the construction manual or be completed as directed by the Area Construction Manager. Comcast will supply project materials with "the Contractor" being responsible for carefully identifying and maintaining balanced min/max levels in their yards. Verification and reporting of these levels will be submitted to the Area Construction Manager every month. Inventory reconciliation will be required, by project, for each system Entity. Any communication regarding a job is required to be identified by a system Entity.

Per Work Orders and/or Purchase order issued.

Special Circumstances or requests outside of construction conclusive bids must be authorized by a Comcast manager.

8.    Pricing: 2006 Composite/Line Item Pricing

The combined costs of performing multiple tasks in relationship to all aspects of a Comcast construction project must be addressed. Careful, step-by-step calculation of every task, from inception of the project to completion of all construction, will need to be factored in. It is expected that the subcontractor attend all pre-construction meetings as well as make every attempt to attend pre-engineering meetings as well.

Subcontractor should be prepared to work directly with the "trenching agent" and / or developer as to when trenches will be open and "Comcast" participation is required for both main line trench as well as service laterals.

Active Scope:  All –inclusive aspects of overall construction as it relates to underground or aerial cable installation, splicing, activation, CLI for areas spliced, sweep (if needed) as built documentation as described in the construction procedures manual. QC program with appropriate documentation, for the following items

- Activation Construction (all splicing, activation and proofing is complete)
- Inventory Reconciliation
- Addressing Information
- As-built
- Invoicing

## I. Conduit / CIC Placement with all grounding Bid for 2006 Composite work

PRICE: (per Line Item):

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 1 | Place conduit system in existing trench per conduit 1"- 4" | FT | $0.75 |
| 14 | Place inner ducts in existing, clear, proofed conduit | FT | $1.20 |
| 15 | Rod and place P-line in existing (spare) conduit | FT | $0.35 |
| 16 | Rod conduit and install pull line over existing cable. | FT | $1.65 |
| 17 | Pull drop cable in conduit  (empty duct) | FT | $0.75 |
| 18 | Pull feeder cable in conduit  (empty duct) | FT | $1.10 |
| 19 | Pull trunk cable in conduit  (empty duct) | FT | $1.25 |
| 20 | Attach/pull feeder int/ext in building | FT | $3.25 |

3

| 21 | Pull feeder cable thru conduit per cable (over existing cables) | FT | $1.70 |
| 22 | Pull trunk cable thru conduit per cable (over existing cables) | FT | $2.50 |

Conduit Specifications

1. All conduits entering pedestals and vaults should do so at the bottom, at all times. The conduit should extend a minimum of 2" and no more than 3" into the inside of the pedestal or vault. All conduits will be grouped to one end of the vault and plugged with conduit caps immediately after installation, and prior to backfill.
2. All conduit cuts will be made by a hacksaw, and be completely flush and level to the installed vault or pedestal. No jagged edges are acceptable. All substandard work will be fixed at contractor's expense.
3. 1 ½"-2" PVC/CIC shall be used for all mainline trench, unless otherwise directed by management from Comcast. All 1 ½" - 2" PVC/CIC shall be White/Buff in color and marked CATV.
4. 1" PVC/Poly shall be used on single service installations less than 125' in length.
5. When installing PVC for a Power Supply the following will be adhered to; All PVC will be Grey 2 or 3" Schedule 40/80 UL Approved. This conduit must be stamped UL approved or PG&E will not allow us to run their cable in it and activate the power supply.
6. There are never more than five (5) 90 Degree bend or sweeps in any continuous conduit run.
7. Upon completion of conduit installation, a 1/8" Polypropylene Pull Rope must be installed in all conduits to ensure continuity.
8. Use only flooded underground cable in underground installations.
9. When installing cable, do not exceed manufacturers recommended cable pulling tension specs. (600 psi)
10. When installing all cable, caps are to be placed on all cable.
11. 1 full wrap of cable should take place in each vault at all times. 6' should be a good gauge to work with.
12. End to end conduit placement should have the loops going in a clockwise and counter clockwise direction.
13. All cables should be installed to manufacturer specifications as far as bending radius. All kinks in cable will be noted and corrected at the contractor's expense.
14. All cables will be taped for easy identification. Green tape will be used to identify the input cable. Red tape will be used for the output. Box to Box will be labeled with two strips of black tape, or hand written notes taped to each leg.

II. Place or Replace Pedestals, Vaults – includes concrete or asphalt

PRICE: (per Line Item):

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 2 | Install ground rod | EA | $40.00 |
| 3 | Install small pedestal - concrete/asphalt work included | EA | $110.00 |
| 4 | Install medium pedestal  - concrete/asphalt work included | EA | $125.00 |
| 5 | Install cathouse pedestal - concrete/asphalt work included | EA | $185.00 |
| 6 | Install doghouse pedestal - concrete/asphalt work included | EA | $250.00 |
| 7 | Reset small pedestal  - concrete/asphalt work included | EA | $110.00 |
| 8 | Reset medium pedestal  - concrete/asphalt work included | EA | $125.00 |
| 9 | Reset cathouse pedestal  - concrete/asphalt work included | EA | $185.00 |
| 10 | Reset doghouse pedestal - concrete/asphalt work included | EA | $250.00 |
| 11 | Install small vault/pull box  - concrete/asphalt work included | EA | $125.00 |
| 12 | Install medium vault/pull box - 36" concrete/asphalt work included | EA | $280.00 |
| 13 | Install large vault/pull box in soil - 48" concrete/asphalt work included | EA | $500.00 |
| 263 | Install Small Vault Extension | EA | $33.00 |

4

1162161211-M - 7/7/2008 1:57:09 PM

| 264 | Install Med Vault Extension | EA | $75.00 |
| 265 | Install Large Vault Extension | EA | $140.00 |

**Includes:**

1. Excavate site location and remove spoilage.
2. Place Pedestals according to manufacturing specifications.
3. Place grounds as required by local, state and NEC codes.
4. All vaults and pedestals will be free of debris once the unit is set. All vaults will be cleaned out to the appropriate 18-24" level.
5. Complete all restoration to system satisfaction.
6. Perform all traffic control as required by local authorities including coordination while working on a major interstate highway.
7. Contractor will be responsible for requesting and coordinating all utility and underground structures (locates).

### III. Drop in Duct (DID) Placement

Scope: The completed service will have a conduit with a drop in it (DID) from the pedestal or vault then attached to the side of the home. Other options will also be used to increase our ability to complete 100% of these trenches.

**PRICE: (per foot): $1.30 Line Item 257 (house to pedestal or vault)**

Includes:

1. The placement of one 1" DID (drop in duct) or 1" poly or PVC conduit secured within 10' of the power service ground at the building.
2. The other end placed in the pedestal or vault and tagged with the address.
3. 1" will be used for any trench up to 250'. 2". Schedule 40 conduit will be used for anything over 250' (Over 80% of these trenches are less then 60' long)

### IV. Make Ready Work

| Line Item | Description | Unit | Price |
|-----------|-------------|------|-------|
| 2 | Install ground rod | EA | $40.00 |
| 30 | Splice coax plant to node | EA | $150.00 |
| 31 | Dig up cable mid span to install equipment (per location) | EA | $225.00 |
| 32 | Splice / Rebalance Replaced Trunk (includes one half device at each end of cable) | EA | $175.00 |
| 33 | Splice / Rebalance Replaced Feeder (includes one half device at each end) | EA | $145.00 |
| 34 | Splicing and Activation – coax | FT | $1.10 |
| 35 | Install Mini-bridger | EA | $195.00 |
| 36 | Remove/replace Mini-bridger | EA | $225.00 |
| 37 | Install Line Extender | EA | $140.00 |
| 38 | Remove/replace Line Extender | EA | $165.00 |
| 39 | Install line DC/splitter | EA | $60.00 |
| 40 | Remove/replace line DC/splitter | EA | $75.00 |
| 41 | Install line 3-way splitter | EA | $65.00 |
| 42 | Remove/replace line 3-way splitter | EA | $80.00 |

5

| 43 | Install tap | EA | $50.00 |
|---|---|---|---|
| 43A | Remove/replace tap | EA | $55.00 |
| 44 | Remove/replace tap face plate | EA | $25.00 |
| 45 | Install tap EQ | EA | $40.00 |
| 46 | Remove/replace tap EQ | EA | $45.00 |
| 47 | Add straight splice | EA | $35.00 |
| 48 | Rough balance | FT | $0.25 |
| 49 | Activate and Proof Fiber Node | EA | $225.00 |
| 50 | Install setup return laser | EA | $120.00 |
| 51 | Sweep Balance Forward / Return/ Plant Foot | FT | $0.24 |
| 52 | Sweep Balance Return only / Plant Foot | FT | $0.11 |
| 53 | Re-Sweep forward/ return/ Plant foot | FT | $0.24 |
| 54 | Return Certification w/ingress mitigation | FT | $0.12 |
| 86 | Install strand | FT | $0.65 |
| 87 | J-hook plant | FT | $0.05 |
| 88 | Reframe pole | EA | $35.00 |
| 89 | Concrete pole band | EA | $35.00 |
| 90 | Install extension arm (fiberglass) | EA | $35.00 |
| 91 | Install sidewalk guy arm | EA | $38.00 |
| 92 | Install 6" screw anchor (normal soil conditions) | EA | $45.00 |
| 93 | Install down guy 6M | EA | $15.00 |
| 94 | Install OH/pole to pole guy | FT | $65.00 |
| 95 | Install guy guard | EA | $5.00 |
| 96 | Install / change-out Down-guy 4M | EA | $35.00 |
| 97 | Install / change-out Down-guy 6M | EA | $40.00 |
| 98 | Install / change-out Down-guy 10M | EA | $55.00 |
| 99 | Install / change-out Down-guy 16M | EA | $65.00 |
| 100 | Install / change-out Down-guy 25M | EA | $85.00 |
| 101 | Raise / Lower T-Leads and Dead-end attachment, one attachment per location | EA | $130.00 |
| 102 | Raise / Lower Straight through attachment, one attachment per location | EA | $100.00 |
| 103 | Raise / Lower Drop Wire | EA | $12.00 |
| 104 | Raise / Lower Pole mounted terminal | EA | $65.00 |
| 105 | Raise / Lower B Box or control point with balcony | EA | $225.00 |
| 106 | Raise / Lower B Box or control point without balcony | EA | $160.00 |
| 107 | Re-sag cable, per span (separate trip) | EA | $100.00 |
| 108 | Re-sag cable, per span (same trip) | EA | $56.00 |
| 109 | Install 3/4" x 9' anchor rod with 10" expanding plate | EA | $350.00 |
| 110 | Install 1" x 10' anchor rod with 12" expanding plate | EA | $419.00 |
| 111 | Install 1 1/4" x 10' anchor rod with 12"expanding plate | EA | $450.00 |
| 112 | Removal of rock for anchor placement | EA | $75.00 |
| 113 | Install Manta Rey MR-2 anchors with 3/4" x 7' rod | EA | $225.00 |
| 114 | Install Manta Rey MR-1 anchor with 1" x 7' rod | EA | $225.00 |
| 115 | Install Manta Rey MR-1 anchor with 1" x 3 1/2' rod | EA | $175.00 |
| 116 | Place 1" x 3 1/2' rock anchor | EA | $225.00 |
| 117 | Power installed double Helix 1" x 7' rod with triple eye | EA | $250.00 |
| 118 | Remove existing down-guy | EA | $35.00 |

6

| 119 | Install auxiliary eye | EA | $25.00 |
|---|---|---|---|
| 120 | Remove overhead guy 4M | EA | $36.00 |
| 121 | Remove overhead guy 6M | EA | $36.00 |
| 122 | Remove overhead guy 10M | EA | $45.00 |
| 123 | Install insulator(s) in existing strand 4M | EA | $45.00 |
| 124 | Install insulator(s) in existing strand 6M | EA | $45.00 |
| 125 | Install insulator(s) in existing strand 10M | EA | $50.00 |
| 126 | Install insulator(s) in existing strand 16M | EA | $60.00 |
| 127 | Install insulator(s) in existing strand 25M | EA | $80.00 |
| 128 | Install guard arm | EA | $40.00 |
| 129 | Install double guard arm | EA | $70.00 |
| 130 | Install copper bond with Thomas & Betts C-Taps (required by GTE) | EA | $35.00 |
| 131 | Install copper bond with B-Clamps or Weavers (required by SBC {Pacific Bell}) | EA | $12.00 |
| 132 | Place Cross Extension Arms 4' | EA | $40.00 |
| 133 | Place Cross Extension Arms 8' | EA | $62.00 |
| 134 | Place Cross Arms E type | EA | $40.00 |
| 135 | Place Cross Arms F type | EA | $52.00 |
| 136 | Move Guard Arm | EA | $40.00 |
| 137 | Move Double Guard arms | EA | $65.00 |
| 138 | Remove Guard arm | EA | $25.00 |
| 139 | Remove Double Guard arms | EA | $35.00 |
| 140 | Replace "A" bolt with "B" bolt | EA | $23.00 |
| 141 | Install CATV Pole Easement (30' class 6) | EA | $525.00 |
| 142 | Install CATV Pole Street (30' class 6) | EA | $400.00 |
| 143 | Pole Removal | EA | $400.00 |
| 144 | Remove abandoned hardware | EA | $15.00 |
| 145 | Change out dead end or corner pole from 5/8" to 3/4" hardware | EA | $85.00 |
| 146 | Remove fire alarm arm | EA | $45.00 |
| 147 | Remove fire alarm circuit (per span foot) | FT | $0.38 |
| 148 | Major rework of riser | EA | $200.00 |
| 149 | Minor rework of riser | EA | $125.00 |
| 150 | Pole steps | EA | $7.00 |
| 151 | Top pole | EA | $80.00 |
| 152 | Trip charge (for no work required) | EA | $50.00 |
| 153 | Lash or overlash fiber Without Recorder | FT | $0.85 |
| 154 | Delash/Relash existing cable | FT | $1.30 |
| 155 | Delash/Relash remove unused coax and relash bundle | FT | $1.40 |
| 156 | Lash Cable | FT | $0.85 |
| 157 | Lash dual feeder cable | FT | $0.85 |
| 158 | Overlash cable | FT | $0.85 |
| 159 | Overlash dual feeder cable | FT | $0.90 |
| 160 | Tree Trim (per span) | SPAN | $75.00 |
| 161 | Install tree guard | EA | $9.00 |
| 162 | Wreck out plant street front, alley, and easement | FT | $0.30 |
| 163 | Place vertical ground, includes bond (aerial) | EA | $45.00 |
| 164 | Install riser with U-guard | EA | $75.00 |
| 165 | Pole Transfer | EA | $205.00 |

7

| 166 | GO95 Post Inspection | EA | $9.00 |
|---|---|---|---|
| 172 | Install RG-6 aerial drop | EA | $49.00 |
| 173 | Wreck-out aerial drop | EA | $18.00 |
| 178 | Midspan/subpole (attachment only, drop additional) | EA | $10.00 |
| 209 | Set up fee less than 500' | EA | $135.00 |

### V. Overlash of Coaxial Cable Bid

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 152 | Trip charge (for no work required) | EA | $50.00 |
| 153 | Lash or overlash fiber Without Recorder | FT | $1.00 |
| 154 | Delash/Relash existing cable | FT | $1.30 |
| 155 | Delash/Relash remove unused coax and relash bundle | FT | $1.40 |
| 156 | Lash Cable | FT | $0.85 |
| 157 | Lash dual feeder cable | FT | $0.85 |
| 158 | Overlash cable | FT | $0.85 |
| 159 | Overlash dual feeder cable | FT | $0.90 |
| 160 | Tree Trim (per span) | SPAN | $75.00 |
| 161 | Install tree guard | EA | $9.00 |
| 162 | Wreck out plant street front, alley, and easement | FT | $0.30 |
| 209 | Set up fee less than 500' | EA | $135.00 |

Includes:
1. Overlash cables to existing plant in prescribed lengths. (Single lash).
2. Provide all traffic control including cones, signage and flaggers as required by local, county or state agencies.
3. Place all bonds and grounds as required.
4. Cap and strap all cable ends.
5. Perform all minor tree trimming in a professional manner, place tree guards as needed and dispose of all debris.
6. Contractor will do customer notification within 5 days of construction by hanging door tags or as directed.
7. Contractor will assist in private easement when deemed necessary.
8. Contractor will be responsible for recording and reporting daily production and providing the Operator with accurate, updated as-built maps.
9. Repair and Re-lash broken lashing wire.

### VI. Pole Construction Bid

**VI.1. Pole Transfer; PRICE: (per pole):** $205.00  Line Item 165
- Transfer all pole line hardware, arms and brackets. All pole configurations to be included. All drop reconfigurations to be included. All traffic control included.

**VI.2. Pole Removal: PRICE: (per pole):** $350.00  Line Item 143
- Remove pole and properly dispose of backfill hole with approved material and restore area. All traffic control included.

**VI.3. Pole Attachment:**
  **PRICE: (per one attachment per location):** $130.00  Line Item 101 T-Lead
  **PRICE: (per one attachment per location):** $100.00  Line Item 102 Straight through

8

- T-Leads and dead-end attachment, one attachment per location
- Straight through attachment, one attachment per location

**VI.4.  Flagging PRICE: (per hour by the location):** $28.00  Line Item 226 2 hour maximum
- Contractor must provide certified Flagging personnel. Additional hours will require pre-approval by Comcast Project Manager.

**VI.5.  Pole Transfer of Power Supply:**
    (Swinging a power supply to a new pole)
                  **PRICE: (per 6 battery):** $950.00  Line Item 28
                  **PRICE: (per 3 battery):** $825.00  Line Item 29

**VI.6.  Pole Placement:**

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 141 | Install CATV Pole Easement (30' class 6) | EA | $525.00 |
| 142 | Install CATV Pole Street (30' class 6) | EA | $400.00 |

## VII.  FIBER OPTIC

### Fiber Splicing Specification:

Fiber splicing - Only Operator approved hardware and materials will be utilized in splice locations. Any substitution must be pre-approved by the Operator's Fiber Optic Manager including but not limited to consumable materials required for preparation such as alcohol, gel solvents or other cleaning materials.

Fiber splice enclosure preparation and assembly will follow the manufacturers' specified instructions or Operator specifications, as approved by Operator Fiber Optic Manager. Any deviation from these specifications must be pre-approved by the Operator.

Only automatic Profile Alignment System or Local Injection Detection System fusion splicers will be used. Regular maintenance and calibration as recommended by the manufacturer will be followed. Proof of calibration will be maintained for each fusion splicer. Only precision cleaving tools are approved. Cleaving tools must have the capability of cleaves of .05 degrees or less on a repeated basis. Operator reserves the right to inspect equipment for calibration and proper operation. Any equipment found out of compliance will be removed from service until deficiencies are corrected.

If links, splices, losses, or workmanship do not meet the standards set forth in the most current version of the Comcast/TCI Construction Manual, the subcontractor will repair the defect. After repairs are made, testing and documentation must be submitted to Operator.

Documentation from the sub-contractor is due within one (1) week of job completion, the Operator will return any discrepancies to the subcontractor within two (2) weeks for repairs, and the subcontractor then has one (1) week to complete repairs. This time line for reporting will remain in effect until acceptable job completion

### 1.  Fiber Splicing Bid Prices  (Unless specified splice case preparation included in splice bids)

**PRICE: (per fiber):** $35.00  Line Item 253 Splice
- If required the work to be done in the maintenance window of 12AM to 5AM (Night work)

**PRICE: (per fiber):** $12.00  Line Item 254 Test

9

1162161214 - 7/7/2008 1:57:09 PM

- Testing is end to end
- Includes all necessary documentation

**PRICE:** (per splice case): **$175.00  Line Item 247** Splice case Re-Entry
- To add new cable or reconfigure cables includes de-lash/re-lash.
- Re-entry price will also be paid for any new location where 8 fibers or less are to be spliced

**PRICE:  Misc.**

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 243 | Install fiber isolation bond | EA | $30.00 |
| 244 | Install intermediate bond | EA | $65.00 |
| 245 | Install Fiber node | EA | $125.00 |
| 248 | Install splice enclosure | EA | $160.00 |
| 249 | OTDR fiber (per fiber) | EA | $7.00 |
| 251 | Mid Sheath Entry | EA | $325.00 |
| 252 | Prep and Block Fiber | EA | $4.00 |

**2.  Lash and Over-lash Fiber Optics Cable Bid**

**PRICE:** (per cable-bearing strand foot): **$1.00  Line Item 153** Lash/Over-lash Fibers
- Over-lash of one (1) fiber optics cable sheath to the existing CATV Plant.
- Place 6" Fiber Optic Markers onto fiber sheath at each pole.
- Install Aerial Storage "Fold Backs" at each end of the splice points. Each storage location will consist of up to 200 feet of fiber over-lash (typically 1 span). Fiber Ground Closures will be placed per plan.
- All fiber placements will be double lashed.
- All fiber is to be placed in accordance with the specifications outlined in the Comcast/TCI Construction Manual and with the specifications outlined in this exhibit.

**3.  Pull Fiber in existing, Empty Fiber Liner or Duct Bid**

**PRICE:** (per cable foot): **$0.85  Line Item 242** Pull Fiber in existing, empty fiber liner or duct

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 14 | Place inner ducts in existing, clear, proofed conduit | FT | $1.20 |
| 15 | Rod and place P-line in existing (spare) conduit | FT | $0.35 |

- Placement of all cable markers, guards and identification tags at vault. Inner duct will be continued up the riser and attached to the strand with stainless steel straps.
- All slack storage locations will be "figure 8"

**4.  Pull Fiber in existing occupied Fiber Liner or Duct Bid**

**PRICE:** (per cable foot): **$1.95  Line Item 260** Pull Fiber in existing occupied fiber liner or duct
**PRICE:** (per cable foot): **$2.50  Line Item 261** Remove and replace coaxial cable to accommodate fiber, including coax splicing

Bid includes:

10

- Placement of all riser (first 10' steel riser), cable markers, guards and identification tags at vault. Inner duct will be continued up the riser and attached with stainless steel straps.
- All slack storage locations will be "figure 8"

**5. De-lash and Re-lash of existing Fibers Bid**

PRICE: (per cable foot) $1.30  Line Item 258  De-lash and Re-lash fiber cables

**VIII. POWER SUPPLY PLACEMENT**

| Line Item | Description | Unit | Price |
|-----------|-------------|------|-------|
| 2 | Install ground rod | EA | $40.00 |
| 23 | Install stand by power supply - Aerial | EA | $650.00 |
| 24 | Install stand by power supply - UG | EA | $850.00 |
| 25 | Remove power supply - Aerial | EA | $125.00 |
| 26 | Remove power supply - UG with restoration | EA | $250.00 |
| 27 | Temporary power supply | EA | $175.00 |
| 28 | Pole transfer of power supply (per 6 battery) | EA | $950.00 |
| 29 | Pole transfer of power supply (per 3 battery) | EA | $825.00 |
| 163 | Place vertical ground, includes bond (aerial) | EA | $45.00 |
| 259 | Splice power inserter | EA | $50.00 |

- Assemble unit – including External disconnect, Internal outlet, Grounding, Battery trays.
- Install unit – including Pole mount hardware or pedestal mount vault enclosure, Enclosure, Power Supply module, Install pull string, Power feed wire, Ground per Comcast/TCI specifications, Power feed conduit and weather head, including Battery vault, Conduit for Battery cables and vent conduit from vault to pole including riser, Batteries, Temperature sensor wire, battery cables and coax conduit. Install numbers.

**IX. UG Construction**

| Line Item | Description | Unit | Price |
|-----------|-------------|------|-------|
| 55 | Add 1 additional 2" conduit (includes an additional 2" trench depth) | FT | $0.80 |
| 56 | Hand trench 1 - 2" conduit 18" depth | FT | $19.00 |
| 57 | Hand trench 1 - 2" conduit 24" depth | FT | $21.00 |
| 58 | Machine trench 1 - 2" conduit 18" depth (bottom of trench to surface level) | FT | $7.50 |
| 59 | Machine trench 1 - 2" conduit 24" depth (bottom of trench to surface level) | FT | $8.50 |
| 60 | Machine trench 1 - 2" conduit 30" depth | FT | $9.50 |
| 61 | Machine trench 1 - 2" conduit 36" depth | FT | $10.50 |
| 62 | Machine trench 1 - 2" conduit add 6" depth | FT | $1.50 |
| 63 | Machine trench Fiber 30" depth | FT | $9.50 |
| 64 | Machine trench Fiber 36" depth | FT | $10.50 |
| 65 | Rock/Coral Trenching (added to trench price) | FT | $6.00 |
| 66 | Bore up 24" to 30" install 1" to 1-1/2" pipe | FT | $14.00 |
| 67 | Bore up 24" to 30" install 2" to 3" pipe | FT | $20.00 |
| 68 | Bore up to 24" to 36" install 4" pipe | FT | $22.00 |
| 69 | Directional bore up to 2" hole | FT | $16.00 |

11

11621612M - 7/7/2008 1:57:09 PM

| 70 | Directional bore up to 4" hole | FT | $18.00 |
|---|---|---|---|
| 71 | Directional bore up to 6" hole | FT | $20.00 |
| 72 | Directional bore up to 6" hole - Street or Sidewalk | FT | $21.00 |
| 73 | 2" Jack and Bore | FT | $28.00 |
| 74 | 4" Jack and Bore | FT | $30.00 |
| 75 | 6" Jack and Bore | FT | $32.00 |
| 76 | Remove and replace sidewalk | SF | $17.00 |
| 77 | Grind Asphalt | SF | $2.25 |
| 78 | Asphalt restoration | SF | $3.25 |
| 79 | Asphalt restoration for directional boring in street | SF | $14.75 |
| 80 | Chip or Slurry Seal Street | SF | $1.10 |
| 81 | Soft dig price - exposing existing facilities, using soft dig method when required | LOC | $225.00 |
| 82 | Street cut asphalt and repair existing conduit and restore | SF | $25.00 |
| 83 | Rocksaw trench in asphalt 24" to include slurry backfill | FT | $18.25 |
| 209 | Set up fee less than 500' | EA | $135.00 |

- Warning tape will be placed wherever open trench is required. (FIBER ONLY)
- Perform all traffic control as required by local authorities including coordination while working on a major interstate highway.
- Contractor will be responsible for requesting and coordinating all utility and underground structures (locates).

## X. MDU/Commercial – Upgrade, Maintenance, Postwire, Rewire or New Build

| Line Item | Description | Unit | Price |
|---|---|---|---|
| 2 | Install ground rod | EA | $40.00 |
| 20 | Attach/pull feeder int/ext | FT | $3.25 |
| 34 | Splicing and Activation - coax | FT | $1.10 |
| 35 | Install Mini-bridger | EA | $195.00 |
| 36 | Remove/replace Mini-bridger | EA | $225.00 |
| 37 | Install Line Extender | EA | $140.00 |
| 38 | Remove/replace Line Extender | EA | $165.00 |
| 39 | Install line DC/splitter | EA | $60.00 |
| 40 | Remove/replace line DC/splitter | EA | $75.00 |
| 41 | Install line 3-way | EA | $65.00 |
| 42 | Remove/replace line 3-way | EA | $80.00 |
| 43 | Install tap | EA | $50.00 |
| 43A | Remove/replace tap | EA | $55.00 |
| 44 | Remove/replace tap face plate | EA | $25.00 |
| 45 | Install tap EQ | EA | $40.00 |
| 46 | Remove/replace tap EQ | EA | $45.00 |
| 47 | Add straight splice | EA | $35.00 |
| 48 | Rough balance | FT | $0.25 |
| 152 | Trip charge (for no work required) | EA | $50.00 |
| 167 | Wreck out SMATV Dish (does not include removal of concrete slab). | EA | $500.00 |

116216121 # - 7/7/2008 1:57:09 PM

| | | | |
|---|---|---|---|
| 168 | Wreck out and remove SMATV Tower (does not include removal of concrete slab). | EA | $450.00 |
| 169 | Wreck out SMATV headends - per rack (does not include closet restoration) | EA | $150.00 |
| 170 | Install & test modulator and filter for channel insertion, with associated as-builts (does not include drop) | EA | $200.00 |
| 171 | Pull/remove drop in each 10' conduit section | EA | $20.00 |
| 172 | Install RG-6 aerial drop | EA | $49.00 |
| 180 | Postwire outlet - 1 drop (RG6 quad-shield) per unit, fittings and labels | EA | $140.00 |
| 181 | Prewire - 1 drop per unit, fittings and labels | EA | $40.00 |
| 182 | Video service activation per outlet same trip as postwire | EA | $25.00 |
| 183 | Video service activation per outlet separate trip | EA | $38.00 |
| 184 | Trim out w/wall plate | EA | $17.50 |
| 185 | Rework outlet | EA | $45.00 |
| 186 | Relocate outlet (within a room - not including fish or rewire to closet) | EA | $35.00 |
| 187 | Wall fish | EA | $35.00 |
| 188 | Soffit fish | EA | $35.00 |
| 189 | Install drop molding | FT | $3.00 |
| 190 | Rework drop molding | FT | $3.50 |
| 191 | EMT installation 1" (excludes materials) | FT | $3.20 |
| 192 | EMT installation 1-1/2" (excludes materials) | FT | $3.75 |
| 193 | EMT installation 2" (excludes materials) | FT | $4.25 |
| 194 | Remove/replace small lockbox (up to a 12"x12" lockbox) | EA | $70.00 |
| 195 | Remove/replace medium lockbox (up to 12"x18" lockbox) | EA | $85.00 |
| 196 | Remove/replace large lockbox (24"x18" and above lockbox) | EA | $125.00 |
| 197 | Install or extend drop jumper - up to 2 feet | EA | $8.75 |
| 198 | Install or extend drop jumper -2 to 10 feet | EA | $15.00 |
| 199 | Install or extend drop jumper over 10 feet | EA | $28.00 |
| 200 | Rework drop in lockbox/ped (includes fittings, retagging and grooming drops {when identifiable} and new splitters) | EA | $7.50 |
| 201 | Transfer drop w/audit | EA | $12.50 |
| 202 | Audit drop only | EA | $7.50 |
| 203 | Tone and tag drop (includes labeling and customer notification) | EA | $18.50 |
| 204 | Video, HSD disconnect SDU/MDU | EA | $12.50 |
| 205 | Core drill to 2" | EA | $100.00 |
| 206 | Core drill to 2" - 4" | EA | $175.00 |
| 207 | Penetrate firewall (not including materials) | EA | $39.00 |
| 208 | Replace fitting (drop fitting) | EA | $1.50 |
| 209 | Set up fee less than 500' | EA | $135.00 |
| 210 | Install self-support feeder aerial | FT | $2.50 |
| 211 | Bond to power ground up to 15' (does not include ground rod) | EA | $8.50 |
| 212 | Bond to power ground over 15' (per foot over 15') | FT | $0.65 |
| 213 | Wreck-out feeder interior or exterior building (does not include molding wreck out) | FT | $1.00 |
| 214 | Wreck-out self-support feeder | SPAN | $75.00 |
| 215 | Wreck-out conduit | FT | $1.50 |
| 216 | Remove drop molding | FT | $1.50 |

13

Jul. 7. 2008  1:53PM    KNOPFLER SMITH & PAZOS APLC    No.1353  P. 60

| 240 | Provide and install backboard | EA | $65.00 |
| 259 | Splice power inserter | EA | $50.00 |

- See Sections I, II, IV, V, VIII, IX, and XI for additional bid pricing.

**XI. Rule 20 Misc.**

| Line Item | Description | Unit | Price |
|-----------|-------------|------|-------|
| 2 | Install ground rod | EA | $45.00 |
| 20 | Attach/pull feeder interior or exterior | FT | $3.00 |
| 162 | GO95 Post Inspection | EA | $9.00 |
| 174 | Rule 20 Drop Replacement (includes install, wreck out and activation if the new drop is within 60 feet of the existing service point) | EA | $95.50 |
| 175 | Rule 20 Drop Extension greater than 60 feet | FT | $0.35 |
| 176 | Rule 20 Drop Extension - 2 to 10 feet | EA | $15.00 |
| 177 | Rule 20 Drop Extension - over 10 feet | EA | $28.00 |
| 211 | Bond to power ground up to 15' (does not include ground rod) | EA | $8.50 |
| 212 | Bond to power ground over 15' (per foot over 15') | FT | $0.65 |

**XII. Additional Rate Schedule**

**Hourly & Misc.**

- All hourly labor must be pre-authorized by the Operator.
- All hourly labor rates include vehicle and equipment necessary to complete the work.

| Line Item | Description | Unit | Price |
|-----------|-------------|------|-------|
| 152 | Trip charge (for no work required) | EA | $50.00 |
| 166 | GO95 Post Inspection | EA | $9.00 |
| 217 | GO95 Project Manager | HR | $95.00 |
| 218 | Project Manager | HR | $85.00 |
| 219 | Supervisor | HR | $58.00 |
| 220 | Foreman | HR | $52.00 |
| 221 | Line Person | HR | $48.00 |
| 222 | Ground Hand | HR | $40.00 |
| 223 | Splicer (Coaxial Cable) - UG | HR | $52.00 |
| 224 | Splicer (Coaxial Cable) - Aerial | HR | $80.00 |
| 225 | Splicer (Fiber Optic Cable) | HR | $75.00 |
| 226 | Flag Person | HR | $28.00 |
| 236 | Add cables, amps and power supplies to drafting | Mile | $20.00 |
| 237 | RF design and drafting | Mile | $144.00 |
| 238 | Redesign | HR | $46.50 |
| 239 | Permitting | HR | $60.00 |
| 241 | Field Engineering | Per Hour | $55.00 |

**8. Start Date for the Project:**

January 1, 2006, per work orders and/or Purchase Orders to be issued.

**9. Completion Date for the Project:**

If not terminated before, pursuant to the Master Construction Agreement, this Statement of Work will expire December 31, 2006.

**10. Work Orders to be Provided by Comcast**

Work orders or SRO's to be provided to Contractor by Company on location.

**11. Specifications for the Work:**

**A.     Manuals & Training Requirements**

The following manuals and other documents, as revised or updated by the Company from time to time, are incorporated by reference, and set forth Specifications for the Work:

- SDU/MDU Mobile Home Grounding Guideline Pamphlet (which in case of conflict with any other document shall be the one adhered to).
- Construction Procedures Manual
- Single Dwelling Unit (SDU) Installation Procedures
- Multiple Dwelling Unit (MDU) Installation Procedures
- Engineering Bulletins (as applicable)
- Network Architecture Manual
- Network Validation Guidelines
- NEC
- NESC
- Installation Bulletins

Regardless of whether the job is completed, no unsafe conditions shall be left behind when the Contractor leaves the jobsite.

All Contractor firms working for Company will be required to have a certified trainer on staff who has been certified by the company to train other contractor personnel in required policies and procedures.

**B.     Quality Control & Performance Standards**

Twenty percent (20%) of all work performed by Technicians must be QC'd by a supervisor or QC person working for the Contractor. Any discrepancies shall be corrected at the Contractor's own expense. Results of the QC inspections, including discrepancies, shall be turned in weekly along with the invoicing. Comcast will also QC a random percentage of the work, independent of the Contractor's own inspections. Monthly meetings will be held between representatives of the Contractor and the local Comcast management to review the QC results. A technician has 72 hours to remedy a failed QC.

**C.     Corrections and Charge backs**

Any job or part of a job performed by a Technician and not completed in accordance with Company specifications that is later corrected by the Contractor must be corrected at the Contractor's expense. This expense includes time, labor, material, and damages. Materials issued to the Technician for other jobs cannot be used to correct any discrepancies unless the material is purchased, by the Contractor, from Company. .

**D.    Damage and Complaints**

The Contractor at its expense must resolve any damage and/or complaints caused by a Contractor. Contractor should report all complaints to his/her supervisor and the Company local Project Manager or Technical Operations Manager within 24 hours. Initial contact with the injured party must be made within 24 hours, but if at all possible, the same day. Written documentation of the resolution must be given to the local Company management within 48 hours following notification of the damage or complaint. If it is not possible to resolve the damage or complaint within 72 hours or if insufficient action has been taken by the Contractor to resolve the complaint, Comcast may choose to take over management. Should this occur, Comcast may bill Contractor for the initial associated job during which the damage or loss occurred, any costs incurred in resolving the claim, including the UNICALL case fee (currently $60) and well as any settlement costs or associated charges to resolve the complaint. For each damage claim or complaint not resolved by Contractor within 72 hours, that Comcast brings in-house, Comcast may choose to bill Contractor a flat fee of One Thousand Dollars ($1,000.00).

**E.    Off-Site Offices and Staging Areas**

Contractors are required to establish their own off-site office/staging areas for their personnel and work issuance.

**F.    Driving Conduct**

Contractors are expected to drive safely and with courtesy. Contractors must not park in or block driveways unless there is no alternative. If there is no other choice, permission must be given by the owner of the premises before parking the vehicle in the customer's driveway. No additional passengers or pets may be in the vehicles while contractor is performing issued work.

**G.    Entering Yards**

Contractors may not enter any person's yard, either a customer's or non-customer's, without first making a reasonable attempt (i.e. knocking on the front door or ringing the doorbell) to gain permission from the owner of the yard. Should a Contractor enter a yard through a gate, he should take care to secure the gate behind him upon entrance and when he exits the property to avoid escaping pets.

**H.    Apparel & Appearance**

Contractor personnel must be properly outfitted and appropriately groomed for the Work.

**I.    Vehicles**

Vehicles shall have professional appearance, and shall not have excessive damage or excessive dirt. - The preferred color of vehicles is white. Vehicles used in connection with the Work must display approved the Company logo in approved locations on the vehicle. Vehicles may also display the Contractor name of Contractor.

**J.    Badges**

16

All Contractors must have ID badges. At no time will a Contractor be allowed to perform work under the Agreement without having a valid badge in their immediate possession and clearly displayed. The badge must clearly identify the individual wearing it, state that the individual is an employee of Contractor and that Contractor as an independent contractor of Comcast. Contractors will contact the Security Assistant to request a badge. Upon termination or change of assignment of the badge holder the badge will need to be turned back into the Security Assistant within 48 hours. The Security Department will issue a receipt for all returned badges. If the badge is not turned back in to the Security Assistant within seven (7) days of termination or change of assignment, the Contractor will be invoiced two hundred and fifty dollars ($250.00) per incident. Should Contractor lose a badge, then Contractor will be invoiced at seventy five dollar ($75.00) replacement fee per incident.

### 13. Staffing and Supervision Requirements

In addition to the requirements set forth in the Agreement, the following shall apply:

It is required that each Contractor designates one Supervisor per 15 Field Technicians. are in the field.

### 14. List any Tools to be Provided By Comcast (all others must be provided by Contractor):

N/A

### 15. List all Materials To Be Provided By Contractor (all others must be provided by Comcast):

If any construction or restorative materials will be required in connection with the Project (e.g., asphalt, concrete and other construction material), Contractor shall supply all such materials and include the cost of such materials on its Invoices to Company.

### SIGNATURES FOLLOW ON THE NEXT PAGE.

1162161214 - 7/17/2006 1:57:09 PM

**16. Designation of Whether <u>Exhibit C</u> of the Agreement (Branding and Identification Requirements) Applies to this Project:**

Exhibit C of this Agreement does not apply to this Project.

*The parties hereby execute this Exhibit B Statement of Work to the Broadband Installation/ Disconnection Agreement effective _____, 2006. By executing this Exhibit B Statement of Work the parties have agreed to the revised unit pricing.*

**Company**                                    **Contractor**

**Comcast Cable Communications**              **MasTec North America, Inc.**
**Management, LLC**

_____              _____
Signature                                     Signature

| **Ed Marchetti** |
| Name (Typed or Printed) |

**Vice President, Engineering**
Title

_____
Date

| **Andrew J. Healey** |
| Name (Typed or Printed) |

**President**
Title

**April 27, 2006**
Date

18

11621612.fl - 7/7/2008 1:57:09 PM

## EXHIBIT C

### Branding and Identification Requirements

**Branding and Identification Requirements** - The Company seeks to present a positive image to its customers and their communities. To that end, all employees and agents of Contractor and any Subcontractor shall maintain a professional, consistent appearance. If indicated on the Statement of Work, all employees and agents of Contractor and any Subcontractor shall comply, at a minimum, with the standards set forth below. Specific interpretation and decisions on compliance are to be exercised by the Company employee supervising Contractor's work.

**The Company Contractor Logo** - Contractor employee uniforms and vehicles shall be identified by proper use of logo designated and approved by the Company.

The Company may provide a pre-approved list of vendors of uniforms, decals and other uses of its logo.

If Contractor does not use a pre-approved vendor, the Company must approve an embroidery sample from the manufacturer before garments are prepared for Contractor.

If Contractor does not use a pre-approved vendor, the Company must approve production samples of the decals and the plan for placement before application to vehicles. Wherever a reference is made to Company's name or logo in connection with Contractor's performance under the Agreement, Contractor shall also identify itself as an independent contractor of Company.

**Apparel** - Employees and agents of Contractor and any Subcontractor performing the Work shall be subject to the following requirements for uniforms.

Such employees and agents must wear collared short-sleeved polo shirts or long-sleeved denim shirts at all times. T-shirts may not be worn unless covered by an approved collared shirt. If Contractor does not use a pre-approved vendor, the style, color and logo placement must be approved by the Company before garments are prepared for Contractor's or any Subcontractor's employees and agents. Polo shirts must be solid colored. All shirts must properly display the approved Company logo or be undecorated.

Pants worn must be clean, full-length, and without holes, tears or ragged edges. Pants must be blue or black denim, or blue, black or tan work pants.

Additional outerwear may be worn as appropriate to weather and working conditions. Outerwear must display the approved logo or be undecorated. Caps must display the approved logo or be undecorated. No other illustration, name, logo, brand identity or description will be present on the cap.

**Vehicles** - Vehicles shall have professional appearance, and shall not have excessive damage or excessive dirt. - The preferred color of vehicles is white. Vehicles used in connection with the Work must display approved Company logo in approved locations on the vehicle. Vehicles may also display the Contractor name of Contractor.

**Independent Contractor** - Where any references to the Company are made under this exhibit, Contractor shall clearly indicate in writing that Contractor is acting as an independent contractor of the Company.

**Modification** - The requirements outlined above are not meant to be all-inclusive, and may be modified from time to time, as needed, and at the discretion of Comcast local Management and/or per Federal, State, Municipal or other Government agency order.

Jul. 7. 2008 1:54PM   KNOPFLER SMITH & PAZOS APLC   No. 1353   P. 66

EXHIBIT  B

7/08→22:40P

11:57-09 1-7/11/2008 1:57:00 PM

10:57:05-1:57:02 PM · 7/2/2008 4:57:02 PM

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO:)*
COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, and
DOES 1 THROUGH 30, inclusive,

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ENDORSED
FILED
ALAMEDA COUNTY

JUL 0 3 2008

CLERK OF THE SUPERIOR COURT
BY KMEL DHILLON Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*
MASTEC NORTH AMERICA, INC., a Florida Corporation,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* CG08396457 |
|---|---|

Superior Court of the State of California
Rene C. Davidson Alameda County Courthouse
1225 Fallon Street
Oakland, California 94612

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
George Knopfler, Esq., #094041                    (818) 991-2277  (818) 991-2270
James Pazos, Esq., #163609
KNOPFLER & PAZOS, An Assn. of Professinal Law Corps.
31194 La Baya Drive, Suite 101, Westlake Village, CA 91362

| DATE: JUL 0 3 2008 | Pat S. Sweeten | Clerk, by | KMEL DHILLON | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Comcast Cable Communications management, LLC

under ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
      ☒ other *(specify):* Corporation code (706)
4. ☐ by personal delivery on *(date):*

[SEAL]

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

# SUMMONS

Legal Solutions⁺

Page 1 of 1
Code of Civil Procedure §§ 412.20, 465

No:1324  P. 2/65

JUL. 2. 2008 4:43PM    KNOPFLER SMITH & PAZOS APLC

No:1353  P. 3

JUL. 7. 2008 1:43PM    KNOPFLER SMITH & PAZOS APLC

**EXHIBIT C**

ENDORSED
FILED
ALAMEDA COUNTY

AUG - 5 2008

CLERK OF THE SUPERIOR COURT
By _____
                                    Deputy

1  COOPER, WHITE & COOPER LLP
   WALTER W. HANSELL (SBN 114913)
2    whansell@cwclaw.com
   JIE-MING CHOU (SBN 211346)
3    jchou@cwclaw.com
   201 California Street, 17th Floor
4  San Francisco, California 94111
   Telephone:    (415) 433-1900
5  Facsimile:    (415) 433-5530

6  Attorneys for Defendant COMCAST CABLE
   COMMUNICATIONS MANAGEMENT, LLC,
7

8

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                    COUNTY OF ALAMEDA

11

12  MASTEC NORTH AMERICA, INC., a          CASE NO. RG 08396457
    Florida corporation,
13                                          ANSWER TO COMPLAINT FOR
              Plaintiff,                    BREACH OF CONTRACT; QUANTUM
14                                          MERUIT; OPEN BOOK ACCOUNT
         vs.
15
    COMCAST CABLE COMMUNICATIONS
16  MANAGEMENT, LLC, and DOES 1
    THROUGH 50, inclusive,
17                                          BY FAX
              Defendants.
18

19        For its answer to the unverified Complaint ("Complaint") of MASTEC NORTH

20  AMERICA, INC. ("Plaintiff") for damages on file herein, defendant COMCAST CABLE

21  COMMUNICATIONS MANAGEMENT, LLC ("Comcast") generally denies each and every

22  allegation of the Complaint and further denies that Plaintiff has been damaged in any manner or

23  amount.

24                    **AFFIRMATIVE DEFENSES**

25        Comcast further answers Plaintiff's complaint by asserting the following separate

26  additional or affirmative defenses.  By asserting these additional or affirmative defenses, Comcast

27  does not admit any of Plaintiff's allegations nor does Comcast admit or agree that it has the burden

28  of proof as to any fact or allegation that may support such additional or affirmative defenses.

ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT

## FIRST AFFIRMATIVE DEFENSE

1.    Plaintiff's claims are barred by the doctrine of mootness, because Comcast has acted to cure all alleged acts and omissions giving rise to the causes of action.

## SECOND AFFIRMATIVE DEFENSE

2.    Comcast alleges that Plaintiff's Complaint, including each cause of action thereof, fails to state facts sufficient to constitute a cause of action against Defendant.

## THIRD AFFIRMATIVE DEFENSE

3.    Plaintiff is estopped from seeking any relief from Comcast by reason of Plaintiff's conduct, acts and assertions.

## FOURTH AFFIRMATIVE DEFENSE

4.    Plaintiff has waived or released whatever rights it may have had against Comcast by reason of Plaintiff's conduct, acts and assertions.

## FIFTH AFFIRMATIVE DEFENSE

5.    As a result of its acts and omissions, Plaintiff has unclean hands and is, therefore, barred from asserting any claims against Comcast.

## SIXTH AFFIRMATIVE DEFENSE

6.    Plaintiff, by reason of its knowledge, statements, and conduct, consented to all of the acts or omissions that are alleged against Comcast.

## SEVENTH AFFIRMATIVE DEFENSE

7.    Plaintiff did not exercise ordinary care, caution, and prudence in connection with the transactions and events alleged in its complaint and is, therefore, barred entirely from recovery against Comcast.  If Plaintiff were found to be entitled to some compensation, that compensation should be reduced in proportion to the Plaintiff's fault.

## EIGHTH AFFIRMATIVE DEFENSE

8.    Comcast's conduct with regard to the matters alleged was justified, reasonable and/or within any applicable standard of care.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

2

ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT

## NINTH AFFIRMATIVE DEFENSE

9.      If Comcast is held to be liable to Plaintiff, Comcast is entitled to an offset in the amount that Plaintiff is held to be liable to Comcast.

## TENTH AFFIRMATIVE DEFENSE

10.     Any losses, damages and/or injuries sustained by Plaintiff were proximately caused by the fault of persons or entities other than Comcast.

## ELEVENTH AFFIRMATIVE DEFENSE

11.     Any losses, damages and/or injuries sustained by Plaintiff were the result of superseding and intervening acts of third parties.

## TWELFTH AFFIRMATIVE DEFENSE

12.     Plaintiff did not reasonably rely to its detriment on any alleged representation of Comcast.

## THIRTEENTH AFFIRMATIVE DEFENSE

13.     Plaintiff is barred by the doctrine of *in pari delicto* from obtaining the relief requested.

## FOURTEENTH AFFIRMATIVE DEFENSE

14.     Plaintiff's claims are barred by the doctrine of laches.

## FIFTEENTH AFFIRMATIVE DEFENSE

15.     Plaintiff engaged in willful misconduct and gross negligence in its dealings with Comcast.

## SIXTEENTH AFFIRMATIVE DEFENSE

16.     Plaintiff ratified or approved the alleged wrongful acts.

## SEVENTEENTH AFFIRMATIVE DEFENSE

17.     Plaintiff's damages, if any, were caused in whole or in part by third parties over whom Comcast had no control. An apportionment as to fault should be made as to reduce the damages awarded to Plaintiff, if any, by that portion of fault attributable to the actions of said parties.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

3

ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT

1

### EIGHTEENTH AFFIRMATIVE DEFENSE

2    18.   Comcast alleges that if Plaintiff did sustain injuries as alleged in the Complaint or

3 otherwise, Plaintiff's claim is barred by the appropriate statute of limitations including, but not

4 limited to, Code of Civil Procedure Sections 337, 337.1, 337.15, 338, 339, 340, and/or 343 and

5 California Commercial Code §§ 2607 and 2725.

6

### NINETEENTH AFFIRMATIVE DEFENSE

7    19.   Comcast alleges that each and every cause of action is barred because Plaintiff

8 failed and neglected to use reasonable care to mitigate, minimize, or avoid the damages alleged.

9

### TWENTIETH AFFIRMATIVE DEFENSE

10    20.   Comcast alleges that each and every cause of action is barred because Comcast has

11 fully performed all of its contractual duties, if any are owed, except for such duties as have been

12 excused and/or prevented by the acts or omissions of Plaintiff and/or their agents and other

13 representatives, and/or any third party. Plaintiff therefore can not recover from Comcast for any

14 alleged breach of contract averred in the complaint pursuant to California Civil Code section 1473.

15

### TWENTY-FIRST AFFIRMATIVE DEFENSE

16    21.   Comcast alleges that the complaint and each and every cause of action therein is

17 barred because Plaintiff or others were negligent in and about the matters alleged in the complaint

18 and in each alleged cause of action, and this negligence proximately and actually caused, in whole

19 or in part, the damages alleged in the complaint. The amount of damages should thus be reduced

20 by the comparative fault of Plaintiff and any person whose negligent acts or omissions are imputed

21 to them.

22

### TWENTY-SECOND AFFIRMATIVE DEFENSE

23    22.   Comcast alleges that the complaint and each and every cause of action therein is

24 barred because Comcast has paid to Plaintiff all such amounts as are due from Comcast.

25

### TWENTY-THIRD AFFIRMATIVE DEFENSE

26    23.   Comcast alleges that Plaintiff impliedly assumed the risk, if any there was, with

27 respect to the condition and conduct alleged in Plaintiff's Complaint, and that Plaintiff's

28 assumption of the risk bars or proportionately reduces Plaintiff's claim.

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

4

ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT

1

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

2       24.    Comcast alleges that Plaintiff's allegations are so uncertain, ambiguous, and/or

3   unintelligible as to bar any recovery by Plaintiff.

4

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

5       25.    Comcast alleges that the complaint and each and every cause of action therein is

6   barred because Plaintiff has breached the construction agreement by failing to perform its duties as

7   required under the agreement.

8

## ADDITIONAL DEFENSES

9       26.    At the time of the filing of this answer, affirmative defenses may not have been

10  alleged for reasons that insufficient facts and information were available after reasonable inquiry.

11  Comcast therefore reserves the right to amend this answer to allege additional affirmative defenses

12  based upon subsequent discovery of new or different facts or subsequent appreciation of currently

13  known facts and further reserves the right to seek indemnity and/or contribution from any third

14  parties.

15

## PRAYER

16      WHEREFORE, Comcast prays that Plaintiff take nothing by way of relief and for

17  judgment in its favor and against Plaintiff and for:

18      (1)    Attorneys' fees and costs of suit herein; and

19      (2)    For such other and further relief as the Court deems just or proper.

20

21  DATED: August 5, 2008                      COOPER, WHITE & COOPER LLP

22

23                                             By: _____
                                                   Jie-Ming Chou
24                                                 Attorneys for Defendant Comcast Cable
                                                   Communications Management, LLC
25  605309.1

26

27

28

ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT

1

## PROOF OF SERVICE

2      I am a resident of the State of California.  I am over the age of eighteen years, and not a party to this action.  My business address is 201 California Street, Seventeenth Floor, San

3    Francisco, California 94111-5002.

4      On August 5, 2008, I served the following document(s):

5    **ANSWER TO COMPLAINT FOR BREACH OF CONTRACT; QUANTUM MERUIT; OPEN BOOK ACCOUNT**

6    on each of the parties listed below at the following addresses:

7

George Knopfler, Esq.

8    James Pazos, Esq.
Knofpler & Pazos, An Assn. of Professional Law Corporation

9    31194 La Baya Drive, Suite 101
West Lake Village, CA 91362

10

11   **BY MAIL:**  I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service.

12   Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.  On the date specified above, as to each of the parties

13   identified in the above service list, a true copy of the above-referenced document(s) were placed for deposit in the United States Postal Service in a sealed envelope, with postage fully prepaid;

14   and on that same date that envelope was placed for collection in the firm's daily mail processing center, located at San Francisco, California following ordinary business practices.

15

      I declare under penalty of perjury under the laws of the State of California that the

16   foregoing is true and correct.

17      Executed on August 5, 2008, at San Francisco, California.

18

19    _____

20   Gina R. Rivera

21

22

23

24

25

26

27

28

COOPER, WHITE
& COOPER LLP
ATTORNEYS AT LAW
201 CALIFORNIA STREET
SAN FRANCISCO, CA 94111

605433.1